Opinion by JUDGE HAWTHORNE
¶ 1 Defendant, Vanessa Ann Zubiate, appeals her convictions entered following a jury trial for aggravated driving after revocation prohibited (aggravated DARP) and driving while ability impaired (DWAI). She also appeals her driving under restraint (DUR) conviction entered following her guilty plea to that offense, and the sentence imposed. We affirm.
I. Background
¶ 2 Shortly after midnight on October 2, 2010, Officer Tom Rayside observed a car make a wide right turn in a residential area and began following it. The car made another right turn without signaling until after the turn had been completed, and the driver pulled over and stopped. No one exited the car for ten to fifteen seconds, and Officer Rayside approached it.
¶ 3 Defendant, the driver, was with two passengers. Officer Rayside smelled alcohol and marijuana in the vehicle. He asked defendant if she had been drinking, and she responded that she had a few drinks and had smoked marijuana earlier. She agreed to perform several roadside sobriety tests, which Officer Rayside determined were performed unsatisfactorily. He arrested her for suspicion of driving under the influence of alcohol or drugs, advised her of Colorado's express consent statute[1] , and informed her that she could refuse a chemical test or be taken to a local hospital to have blood drawn for a chemical test. According to Officer Rayside's police report, defendant "stated that she did not like needles and wanted to refuse a chemical test."[2] Defendant was charged with aggravated DARP, driving under the influence (DUI), DUR, failing to provide proof of insurance, and failing to signal a turn.
*761 ¶ 4 Before her first trial, defendant pled guilty to DUR and stipulated to the aggravated DARP elements establishing her habitual offender status, her knowledge of that status, and her revocation.
¶ 5 During the first trial, Officer Rayside testified that defendant told him that she was afraid of needles and refused to take a chemical test. Defendant's theory of defense was that she was afraid of needles and had refused the chemical test for that reason, not because she was intoxicated. To support this theory, her friend, H.W., testified that defendant had refused pain medication during childbirth and when she broke her arm because she was afraid of needles.
¶ 6 The first jury found defendant guilty of failing to provide proof of insurance and failing to signal. The trial court declared a mistrial on the DARP and DUI charges because the jury was unable to reach a verdict.
¶ 7 Defendant was retried on the DARP and DUI charges. During the second trial, defendant again maintained that she had refused the chemical test because she was afraid of needles and not because she was intoxicated. However, during defense counsel's cross-examination of Officer Rayside, the prosecution moved to preclude the defense from eliciting testimony about defendant's statement concerning her fear of needles on the basis that it was inadmissible hearsay. The trial court agreed, sustained the prosecution's objection, and precluded defense counsel from questioning Officer Rayside about whether defendant had stated that she was afraid of needles. Defendant was convicted of aggravated DARP and DWAI, a lesser included offense of DUI.
¶ 8 This appeal followed.
II. Excluding Defendant's Out-of-Court Statement
¶ 9 Defendant contends that the trial court erred in excluding an out-of-court statement concerning her fear of needles, and, consequently, deprived her of her constitutional right to present evidence in her own defense. We disagree.
A. Law and Review Standard
¶ 10 Few rights are more fundamental than the accused's right to present evidence that might influence the jury's determination of guilt. People v. Richards, 795 P.2d 1343, 1345 (Colo.App.1989). However, the right to present a defense is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence. People v. Harris, 43 P.3d 221, 227 (Colo.2002) ; see Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").
¶ 11 We review a trial court's evidentiary ruling for an abuse of discretion. People v. Ibarra, 849 P.2d 33, 38 (Colo.1993). A trial court abuses its discretion when its ruling is (1) manifestly arbitrary, unreasonable, or unfair or (2) based on an erroneous understanding or application of the law. People v. Casias, 2012 COA 117, ¶17, 312 P.3d 208.
B. Hearsay
¶ 12 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c) ; see People v. Huckleberry, 768 P.2d 1235, 1241 (Colo.1989). Hearsay is inadmissible unless it falls within an exception to the rule against hearsay. CRE 802. "The rule against hearsay exists because '[h]earsay statements are presumptively unreliable since the declarant is not present to explain the statement in context.' " People v. Newton, 966 P.2d 563, 572 (Colo.1998) (quoting Blecha v. People, 962 P.2d 931, 937 (Colo.1998) ).
¶ 13 Defendant argues that the court erred in excluding her statement to Officer Rayside concerning her fear of needles because it was (1) offered for a nonhearsay purpose, (2) a statement against interest, and (3) a statement concerning her state of mind. We address these arguments in turn.
*762 1. Nonhearsay Purpose
¶ 14 Defendant argues that her statement was admissible for the nonhearsay purpose of providing context for her actions. We are not persuaded.
¶ 15 A relevant out-of-court statement not offered for its truth is admissible as nonhearsay evidence. People v. Scearce, 87 P.3d 228, 233 (Colo.App.2003) ; see People v. Welsh, 176 P.3d 781, 790 (Colo.App.2007) ( "If an out-of-court statement is not offered for its truth, it is admissible as nonhearsay evidence as long as it is relevant.").
¶ 16 Here, the statement was only relevant if it was offered for the truth of the matter asserted, namely, that defendant feared needles. Accordingly, it was hearsay. See CRE 801(c). Because the statement is hearsay, an exception must apply for it to be admissible. See People v. Czemerynski, 786 P.2d 1100, 1107 (Colo.1990) (an out-of-court statement offered to prove the truth of the matter asserted generally is not admissible unless it falls within an exception to the hearsay rule).
2. Statement Against Interest
¶ 17 Defendant argues that her statement was admissible as a statement against interest. We disagree.
¶ 18 CRE 804(3) defines a statement against interest as a statement that
(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.
¶ 19 Relying on People v. Newton, defendant maintains that her statement concerning needles was admissible as a collaterally neutral statement related to a statement against interest. 966 P.2d at 578 (severing collaterally neutral statements from precise self-inculpatory remarks deprives the jury of important context surrounding that self-inculpatory remark). We are not persuaded.
¶ 20 Here, defendant's refusal to submit to the chemical test exposed her to criminal liability. See § 42-4-1301(6)(d), C.R.S.2012 ("[i]f a person refuses to take or to complete, or to cooperate with the completing of, any test or tests as provided in section 42-4-1301.1 and such person subsequently stands trial for DUI or DWAI, the refusal to take or to complete, or to cooperate with the completing of, any test or tests shall be admissible into evidence at the trial"). However, her statement that she feared needles was so self-serving that it was inherently unreliable because it suggested that she had refused the chemical test because of her fear of needles and not because the test would have confirmed that she was intoxicated. See Newton, 966 P.2d at 566 (admitting a statement against interest is subject to two limitations: (1) a trial court should exclude any remarks that are so self-serving as to be unreliable; and (2) if the trial court determines that the statement is unreliable because the declarant had a significant motivation to curry favorable treatment, the entire narrative is inadmissible). Thus, defendant's statement about fearing needles was so self-serving as to be unreliable, not collaterally neutral. Therefore, it was inadmissible. Id. (under CRE 804(b)(3), a trial court should admit the precise statement against penal interest contained in a declarant's narrative and related, collaterally neutral statements); see also People v. Atkins, 844 P.2d 1196, 1203 (Colo.App.1992) (statements allegedly demonstrating that the defendant was "sorry" that he had shot the victim and that he had not meant for the victim to die were not admissible as statements against interest because their attempted use was to mitigate the first degree murder charge), abrogated on other grounds by Candelaria v. People, 148 P.3d 178 (Colo.2006).
3. State of Mind
¶ 21 Defendant argues that her statement concerning needles was admissible to show *763 her then existing state of mind. We discern no basis for reversal.
¶ 22 At trial, defendant did not argue that her statement was admissible under CRE 803(3) to show her then existing state of mind. Nonetheless, defendant asserts that this issue is preserved because the court sustained the prosecution's objection and precluded defense counsel from eliciting her complete statement to Officer Rayside. She asserts that constitutional harmless error review applies. The People concede that "[defendant] preserved the issue at trial with her objection and the district court overruling the objection," but maintain that we should review for nonconstitutional harmless error. We are not bound by the parties' concessions and may rely on our own legal interpretations, even if they are clearly inconsistent with counsels' representations and arguments. See People v. Backus, 952 P.2d 846, 850 (Colo.App.1998). We elect to do so here and conclude that plain error review applies because this issue is unpreserved.[3]
¶ 23 Here, defendant was the proponent of the evidence, and the trial court sustained the prosecution's hearsay objection. At trial, defendant argued that the statement was admissible under the rule of completeness. Because she did not argue that the statement was admissible under CRE 803(3), we review her contention for plain error. See People v. Davis, 218 P.3d 718, 731 (Colo.App.2008) (reviewing the defendant's contention that evidence was admissible as a prior consistent statement for plain error where that argument was not raised at trial).
¶ 24 Plain error is both obvious and substantial and so undermines the trial's fundamental fairness as to cast serious doubt on the judgment of conviction's reliability. Id. ; see Crim. P. 52(b) ; People v. Miller, 113 P.3d 743, 750 (Colo.2005). We conclude that any error was not plain because the error was not obvious considering existing Colorado case law. See People v. Ujaama, 2012 COA 36, ¶42, 302 P.3d 296 (to qualify as plain error, the error must be so clear-cut and obvious that a trial judge should be able to avoid it without the benefit of an objection). An error may be obvious if the issue has been decided by a division of this court or the Colorado Supreme Court, or if the trial court has erroneously applied statutory law. Id.
¶ 25 The state of mind exception provides that "[a] statement of the declarant's then existing state of mind ... (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is not excluded by the hearsay rule. CRE 803(3) ; People v. Franklin, 782 P.2d 1202, 1206 (Colo.App.1989) ("assertions about the declarant's state of mind are admissible to prove the truth of the matter asserted").
¶ 26 Here, defendant was the declarant. Her statement to the officer that "she did not like needles and wanted to refuse a chemical test" was arguably admissible under CRE 803(3) because it showed her mental feeling and her motive, intent, and plan to refuse the test because she did not like needles. See People v. Rogers, 68 P.3d 486, 493 (Colo.App.2002) (the victim's statements that she was afraid of another "fall squarely within the state of mind hearsay exception under CRE 803 because they refer not to past events or conditions, but to the victim's then existing state of mind"); People v. McGrath, 793 P.2d 664, 666-67 (Colo.App.1989) ( CRE 803(3) allows admitting a declarant's statements showing his or her state of mind as to plan, intent, or motive).
¶ 27 However, several divisions of this court have concluded that a defendant's self-serving hearsay declarations may be excluded because there is nothing to guarantee their trustworthiness. See Davis, 218 P.3d at 731 ; People v. Avery, 736 P.2d 1233, 1237 (Colo.App.1986) ; People v. Abeyta, 728 P.2d 327, 331 (Colo.App.1986) ("Hearsay declarations made by a defendant in his own favor are generally not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial truthworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse; an accused could *764 create evidence for himself by making exculpatory statements for subsequent use at his trial. ").[4]
¶ 28 Here, defendant's statement was self-serving. As discussed above, it tended to support her theory of defense that she had refused the chemical test because she was afraid of needles, not because she was intoxicated. Thus, considering existing Colorado case law, any error was not obvious. See Davis, 218 P.3d at 731 ; Avery, 736 P.2d at 1237 ; Abeyta, 728 P.2d at 331.
C. Rule of Completeness
¶ 29 Defendant contends that her statement concerning her fear of needles was admissible under the rule of completeness. We disagree.
¶ 30 Where admitting part of a statement would be unfair or misleading, the rule of completeness allows the adverse party to introduce other parts of the statement which ought in fairness to be considered along with it. CRE 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."); People v. Melillo, 25 P.3d 769, 775 & n.4 (Colo.2001) ; People v. Muniz, 190 P.3d 774, 787 (Colo.App.2008).
¶ 31 We conclude that the court did not err in excluding her statement on this basis for two reasons.
¶ 32 First, defendant's inculpatory statement-her refusal to submit to a chemical test-was not introduced into evidence. On direct examination, Officer Rayside testified that he placed defendant in custody and advised her of Colorado's express consent law after she unsatisfactorily performed roadside maneuvers and admitted to drinking alcohol and smoking marijuana. The prosecutor asked, "[D]id [defendant] agree to provide a sample of her blood?" Officer Rayside responded, "No, ma'am." He did not testify that defendant stated that she refused to submit to a chemical test during the second trial. Thus, the prosecution did not introduce the initial portion of her statement-in which she refused the test. See CRE 801(a) ("A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him to be communicative."). Accordingly, the rule of completeness is inapplicable because there was no statement to complete.
¶ 33 Second, as discussed above, defendant's statement was self-serving. Self-serving hearsay declarations made by a defendant may be excluded under the rule of completeness because there is nothing to guarantee their trustworthiness. Davis, 218 P.3d at 731.
III. Merger
¶ 34 Defendant contends that her DARP and DUR convictions merge because DUR is a lesser included offense of DARP. She maintains that her DUR conviction and sentence must therefore be vacated. We disagree.
¶ 35 We review de novo whether merger applies to criminal offenses because it presents an issue of statutory interpretation. People v. Torres, 224 P.3d 268, 275 (Colo.App.2009).
¶ 36 The Double Jeopardy Clauses of the United States and Colorado Constitutions generally prohibit imposing multiple punishments for the same offense. U.S. Const. amend. V ; Colo. Const. art. II, § 18 ;
*765 People v. Abiodun, 111 P.3d 462, 464-65 (Colo.2005). However, an accused may be convicted of multiple offenses arising out of the same transaction if the General Assembly makes clear its intent to punish the same conduct with more than one conviction and sentence. Abiodun, 111 P.3d at 465. Where the General Assembly proscribes conduct in different penal code provisions and identifies each provision with a different title, its intent to establish more than one offense is generally clear. Id. In such circumstances, separate convictions and sentences are permitted unless all the separately designated offense's elements are included among the other's elements. Id.
¶ 37 To determine whether one crime is a lesser included offense of another crime under section 18-1-408(5)(a), C.R.S.2012, we apply the "strict elements test." Meads v. People, 78 P.3d 290, 294 (Colo.2003). Under this test, an offense is included in another offense if establishing the greater offense's statutory elements necessarily establishes all the lesser offense's elements. See id.; People v. Leske, 957 P.2d 1030, 1036 (Colo.1998) ; People v. Carey, 198 P.3d 1223, 1226 (Colo.App.2008) ; see also § 18-1-408(5)(a) ; Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In conducting this analysis, we compare the offenses' statutory elements, not the evidence presented at trial. Armintrout v. People, 864 P.2d 576, 579 (Colo.1993).
¶ 38 Initially, we reject the People's argument that failing to raise this issue in the trial court precludes appellate review. See People v. Tillery, 231 P.3d 36, 47 (Colo.App.2009) (reviewing for plain error an unpreserved claim that multiple punishments for the same offense violated double jeopardy protections), aff'd sub nom. People v. Simon , 266 P.3d 1099 (Colo.2011) ; but see People v. Cooper , 205 P.3d 475, 477-78 (Colo.App.2008) (declining to address an unpreserved double jeopardy claim). We therefore review defendant's contention for plain error. See Tillery , 231 P.3d at 47.
¶ 39 Section 42-2-206, C.R.S.2012, establishes the offense and punishments for aggravated DARP and DARP. As relevant here, it provides:
(1)(a)(I) It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department prohibiting the operation remains in effect. Any person found to be an habitual offender, who operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, commits a class 1 misdemeanor.
....
(b)(I) A person commits the crime of aggravated driving with a revoked license if he or she is found to be an habitual offender and thereafter operates a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect and, as a part of the same criminal episode, also commits ... [DUI or DUI per se, DWAI, reckless driving, eluding or attempting to elude a police officer, violating the requirements for accidents and accident reports, or vehicular eluding].
(II) Aggravated driving with a revoked license is a class 6 felony....
¶ 40 Thus, DARP is a class one misdemeanor, unless the driver commits certain other offenses while driving with a revoked license, in which case the driver is guilty of aggravated DARP, a class six felony. Because the other driving offenses listed in section 42-2-206(1)(b)(I) raise DARP's offense level, they are sentence enhancers. See Armintrout, 864 P.2d at 580 (statutory provisions raising an offense's level are sentence enhancers, not essential elements, but still must be proved beyond a reasonable doubt). Sentence enhancement provisions are not considered when determining whether one offense is a lesser included of a greater offense. See id.
¶ 41 Therefore, we consider the DARP offense elements, which are (1) that the defendant; (2) in the State of Colorado, at or about the date and place charged; (3) having been found by the Department of Revenue, Division of Motor Vehicles, to be a habitual traffic offender; (4) with notice and knowledge of revocation of his or her privilege to drive; (5) operated a motor vehicle; (6) while the revocation of the Department of Revenue, Division of Motor Vehicles prohibiting *766 such operation remained in effect. § 42-2-206 ; Griego v. People, 19 P.3d 1, 2 (Colo.2001) (element of DARP is mental state of "knowingly").
¶ 42 Section 42-2-138, C.R.S.2012, establishes the offense of DUR:
(1)(a) Any person who drives a motor vehicle or off-highway vehicle upon any highway of this state with knowledge that the person's license or privilege to drive, either as a resident or a nonresident, is under restraint for any reason other than conviction of DUI, DUI per se, DWAI, habitual user, or UDD is guilty of a misdemeanor. A court may sentence a person convicted of this misdemeanor to imprisonment in the county jail for a period of not more than six months and may impose a fine of not more than five hundred dollars.
....
(d)(I) A person who drives a motor vehicle or off-highway vehicle upon any highway of this state with knowledge that the person's license or privilege to drive, either as a resident or nonresident, is restrained under section 42-2-126(3), is restrained solely or partially because of a conviction of DUI, DUI per se, DWAI, habitual user, or UDD, or is restrained in another state solely or partially because of an alcohol-related driving offense is guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment in the county jail for not less than thirty days nor more than one year and, in the discretion of the court, by a fine of not less than five hundred dollars nor more than one thousand dollars.
¶ 43 As relevant here, section 42-2-126(3), C.R.S.2012, mandates that the department of motor vehicles revoke the license of a person who drives with a blood alcohol content in excess of 0.08.
¶ 44 Thus, section 42-2-138(1)(d)(I) increases the punishment for DUR if the driver's license or privilege to drive is restrained because of certain alcohol-related driving offenses. That subsection therefore establishes a sentence enhancer. See People v. Whitley, 998 P.2d 31, 33 (Colo.App.1999) (statutory provision established a sentence enhancer, not a substantive offense, because the defendant could be convicted of the underlying offense without any proof regarding the sentence enhancer, and the sentence enhancement provision increased the potential punishment).
¶ 45 Accordingly, the elements of DUR are (1) that the defendant; (2) in the State of Colorado, at or about the date and place charged; (3) drove a motor vehicle; (4) upon any highway of this state; (5) when his or her license or driving privilege was under restraint; and (6) with knowledge that his or her driving privilege was under restraint. § 42-2-138.
¶ 46 The People argue that defendant's convictions do not merge because DUR requires proof that the existing revocation be for a previous alcohol-related offense. We are not persuaded, but conclude that defendant's convictions do not merge for another reason.
¶ 47 We reject the People's argument because, as discussed above, the provision enhancing a defendant's sentence for having had a license revoked for an alcohol-related offense is a sentence enhancer, not a substantive element. See Armintrout, 864 P.2d at 580 (a sentence enhancement provision is not an element of the charged offense and is not considered when determining whether one offense is the lesser included of another).
¶ 48 Relying on People v. Rodriguez, 849 P.2d 799, 802 (Colo.App.1992), defendant argues that her convictions merge. In Rodriguez, another division of this court concluded that driving with a denied, suspended, or revoked license was a lesser included offense of driving after revocation prohibited for being a habitual offender. We disagree with Rodriguez and decline to follow it. See People v. Thomas, 195 P.3d 1162, 1164 (Colo.App.2008) (declining to follow another division's decision); In re Estate of Becker, 32 P.3d 557, 563 (Colo.App.2000) (one division of the court of appeals is not bound by another division's decision), aff'd sub nom. In re Estate of DeWitt, 54 P.3d 849 (Colo.2002).
¶ 49 We conclude that the offenses do not merge because proving the DARP elements does not necessarily establish DUR for two reasons.
*767 ¶ 50 First, DUR requires proof that the offender drove a motor vehicle or off-highway vehicle on any highway within this state. " 'Highway' means the entire width between the boundary lines of every way publically maintained when any part thereof is open to the use of the public for purposes of vehicular travel or the entire width of every way declared to be a public highway by any law of this state." § 42-1-102(43), C.R.S.2012. Thus, DUR applies to offenses committed only on public ways. § 42-2-138(1)(a). DARP, in contrast, does not require that the driver operate the vehicle on a highway. Accordingly, DARP is not limited to the highway and applies to private ways as well. Because DUR requires proof of an additional fact that DARP does not-namely that a motor vehicle was driven on a highway, DUR is not a lesser included offense of DARP. See Meads, 78 P.3d at 294 (upholding the defendant's convictions where establishing all the greater offense's elements did not necessarily establish all the lesser offense's elements).
¶ 51 Second, as another division of this court noted in People v. Zweygardt, the supreme court has defined "operate" more broadly than "drive." 2012 COA 119, ¶20, 298 P.3d 1018 (" 'Drive' means to exercise 'actual physical control' over a motor vehicle. 'Operate' is a somewhat broader term, connoting the action of causing something to occur or causing something to function, usually by direct personal effort." (citations omitted)) (citing People v. Stewart, 55 P.3d 107, 115 (Colo.2002) ). Because one could operate a vehicle without necessarily driving it, the offenses do not merge under the strict elements test. See id.
¶ 52 We therefore conclude that DUR is not a lesser included offense of DARP. Accordingly, defendant's convictions and sentences for both offenses do not merge.
¶ 53 The judgment and sentence are affirmed.
Judge TAUBMAN and Judge GRAHAM concur.

The express consent statute provides, as relevant here: "Any person who is required to take and to complete, and to cooperate in the completing of, any test or tests shall cooperate with the person authorized to obtain specimens of such person's blood, breath, saliva, or urine, including the signing of any release or consent forms required by any person, hospital, clinic, or association authorized to obtain such specimens. If such person does not cooperate with the person, hospital, clinic, or association authorized to obtain such specimens, including the signing of any release or consent forms, such noncooperation shall be considered a refusal to submit to testing." § 42-4-1301.1(3), C.R.S.2012. Section 42-4-1301(6)(d), C.R.S.2012, provides that a refusal to submit to testing is admissible in a subsequent DUI or DWAI prosecution.

Defendant does not challenge Officer Rayside's decision to offer her only a blood test, and she does not argue that she thought she was entitled to choose another type of test. See § 42-4-1301.1(2) (a)(I), (b)(I), C.R.S.2012; Stanger v. Colo. Dep't of Revenue, 780 P.2d 64, 65-66 (Colo.App.1989) (interpreting former DUI statute and concluding that arresting officer could properly demand that the driver submit to a blood test because "unlike the foregoing provisions as to DUI-drug offenses, the statutory provisions as to DUI-alcohol offenses explicitly give the driver the choice of submitting either to a blood or a breath test").

Given our conclusion that the issue is unpreserved, we need not address whether the alleged error is of constitutional dimension. People v. Miller, 113 P.3d 743, 749 (Colo.2005) (plain error analysis is appropriate for reviewing unpreserved claims of constitutional violations).

Other commentators and courts have declined to exclude a party's hearsay statements simply because they are self-serving. See, e.g., 2 McCormick on Evidence 268 n. 8 (6th ed. 2006) ("self-serving statements are not categorically excluded under the Federal Rule"); United States v. DiMaria, 727 F.2d 265, 271-72 (2d Cir.1984) (self-serving nature of a declaration generally goes only to its weight, not its admissibility); United States v. Dellinger, 472 F.2d 340, 381 (7th Cir.1972) ("We think that a flat rule of exclusion of declarations of a party on the grounds that they may be described as 'self-serving' even though otherwise free from objection under the hearsay rule and its exceptions, detracts from the fund of relevant information which should be available to the jury, without, in compensation, materially insuring the integrity of the trial process."); State v. Pavlik, 165 Wash.App. 645, 268 P.3d 986, 990 (2011) ("there is no 'self-serving hearsay' bar that excludes an otherwise admissible statement").