Opinion by JUDGE WEBB
*909 ¶ 1 A jury convicted David Delbert Rediger of interfering with a public employee in a public building under section 18-9-110(1), C.R.S. 2014, and interfering with staff, faculty, or students of an educational institution under section 18-9-109(2), C.R.S. 2014. He appeals on two grounds: first, the evidence was insufficient to prove that the victim was a "public employee" or that the facility was a "public building," as required by 18-9-110(1); and, second, the prosecution made an improper constructive amendment of the second charge by tendering an elemental instruction on a section of 18-9-109 different from the section in the indictment.
¶ 2 After interpreting section 18-9-110(1), we reverse the judgment of conviction on the first count because "public employee" does not include the self-employed director of a private school who was the victim, and "public building" does not include the privately owned and operated school building in which the victim worked. As to the second count, we conclude that by affirmatively acquiescing in all of the instructions tendered by the prosecutor, Rediger's trial counsel did not invite instructional error; rather, he waived any such error. Therefore, we affirm the judgment of conviction on the second count.
I. Background
¶ 3 Believing that Rediger had stolen hay from their property, the victim and her husband asked the district attorney to bring charges against him. While school was in session, Rediger drove to the Rocky Mountain Youth Academy (the Academy)-where the victim worked as owner-director-to discuss the charges.
¶ 4 At trial, Rediger and the victim gave conflicting testimony regarding their encounter. The victim testified that she was in her classroom when Rediger arrived. After she stepped out and told him to leave, he followed her into her classroom before leaving, slamming the door, and driving away. In contrast, Rediger testified that he found the victim outside of the building. Although she told him to leave, he followed her to the classroom landing but did not go inside.
II. The Evidence Was Insufficient to Prove Beyond a Reasonable Doubt that Rediger Interfered with a Public Employee in a Public Building
A. Facts
¶ 5 The victim testified that she was "employed by Rocky Mountain Youth Academy" as the owner, director, and special education teacher. She described the Academy as "a day treatment school that provides academics but also [has] a treatment piece, which provides therapy twice a week for kids who are, for one reason or another, not succeeding in public school." Because the Academy was "state accredited through Colorado Department of Education," state regulations mandated annual monitoring and audits. The Academy also needed to "hold a license through the Department of Human Services in Denver," which required additional audits and inspections, and the "Colorado Department of Health also has to come and monitor and inspect."
¶ 6 The victim also testified that the Academy received funding from the Colorado Department of Education and the Department of Human Services, and that the state "monitor[s] [the Academy] very closely." Ninety-eight percent of the 2008 budget derived from "some type of public department or system or school district." Students were placed through "probation or mental health," "the court system," "private placement," or school districts. The victim received a salary from this budget, but the school's staff were "not currently set up with PERA [the state retirement program]."
¶ 7 She explained that state departments could just "show up" without her permission. When asked whether the state departments "exhibit[ed] any control over [her] facility" she responded that "[y]es," because the school had "to stay accredited; and that's what gives [the Academy their] accreditation," the state departments "check [its] curriculum and that kind of thing." And she *910 agreed with the prosecutor that, "it's not just like you have a private school and you do what you want?"
¶ 8 On redirect examination, she described having founded the school, adding that she "ha[d] to go through the proper channels," including "writ[ing] policy and procedure to Colorado Department of Education," "see[ing] if the State Board of Education w[ould] approve it," "hav[ing] Department of Human Services from Denver come down, visit with you, and also approve it or deny it." As well, the process required the "Colorado Department of Ed [to] approve [the school's] licensure" and the director to have a master's degree. She also confirmed that the school was "compelled to take [students] if the court appoints them to come to your school and you have a spot." But if the Department of Social Services sent a student she "ha[s] the option to say, no, that this is too high a risk for whatever reason or to say, '[t]his isn't the proper placement.' " Similarly, she "d[id]n't believe" that she had to take students sent by "other departments or parts of government."
B. Preservation and Standard of Review
¶ 9 Because Rediger neither moved for judgment of acquittal nor otherwise challenged the sufficiency of the evidence below, he did not preserve this issue. People v. Ujaama, 2012 COA 36, ¶ 37, 302 P.3d 296 (An issue is unpreserved for review when "no objection or request was made in the trial court."). Rediger's suggestion that he did so when counsel addressed this issue briefly during closing argument is unpersuasive. Because Crim. P. 29(a) provides for challenging sufficiency of the evidence by motion, Rediger's argument to the jury failed to sufficiently "alert the trial court to the particular issue." People v. Cordova, 293 P.3d 114, 120 (Colo. App. 2011).
¶ 10 Even so, in Colorado, sufficiency of the evidence may be raised for the first time on appeal. People v. Garcia, 2012 COA 79, ¶ 35, 296 P.3d 285. "Whether the record contains sufficient evidence to support a conviction is subject to de novo review." People v. Heywood, 2014 COA 99, ¶ 9, 357 P.3d 201. But where, as here, the issue is unpreserved, sometimes "the judgment will be reversed only for plain error." Id. ; see also People v. Lacallo, 2014 COA 78, ¶¶ 8-10, 338 P.3d 442 (noting differing opinions among divisions of this court).
¶ 11 Plain error review involves three questions: "whether error occurred; if so, whether it was obvious; and if both, whether the error casts serious doubt on the reliability of the judgment of conviction." Lacallo, ¶ 19. But where a defendant raises sufficiency of the evidence for the first time on appeal, what is the practical consequence of applying plain error review? The answer "depends on which of the three plain error questions is the focus of appellate inquiry." Id .
¶ 12 Where analyzing the evidence requires the preliminary interpretation of a statute neither advanced by the defendant below nor decided by any Colorado court, the initial focus is on obviousness. See id. at ¶ 23. An appellate court need not address the merits of a defendant's sufficiency-of-the-evidence claim when determining the meaning of operative statutory terms "under existing Colorado authority would [have been] difficult," or the argument does not implicate a "well-settled legal principle that numerous courts elsewhere have uniformly embraced." Id. at ¶¶ 30-32 ; cf. People v. Hagos, 250 P.3d 596, 620 (Colo. App. 2009) ("Because no error was plain or obvious at the time of defendant's trial, it follows that there is no plain error here.").
¶ 13 Still, even when "operative statutory terms have never been interpreted, [and] no previous case law would have alerted the court" to the error, Heywood, ¶ 36 (internal quotation marks omitted), if the statute is unambiguous or contains operative terms with "common and ordinary meanings," id. an alleged sufficiency error based on defendant's interpretation would have been obvious. See id. And if obviousness is satisfied, the reviewing court must weigh the sufficiency of the evidence de novo. See id. at ¶ 33.
¶ 14 For these reasons, plain error review can yield a different result only when three rare circumstances converge: a threshold question of statutory interpretation must be *911 answered before sufficiency of the evidence can be determined; that interpretation was crafted by appellate counsel; and the interpretation urged for the first time on appeal fails the obviousness requirement of plain error review. Otherwise, whether or not review is for plain error, the analysis will start-and usually end-with examining the sufficiency of the evidence de novo.
¶ 15 We begin by considering whether this statute has been interpreted by Colorado cases, involves a well-settled legal principle consistently interpreted by other jurisdictions, or includes terms having commonly understood meanings. Then we take up whether defendant's proposed interpretation is correct.
1. Public Employee
¶ 16 We conclude that the phrase "public employee" is unambiguous, for three reasons.
¶ 17 First, the phrase "public employee" includes only plain and ordinary words. Black's Law Dictionary 602 (9th ed. 2009) defines employee as "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." And, as relevant here, Black's also defines "public" as "[r]elating or belonging to an entire community, state, or nation." Id. at 1348.
¶ 18 Second, in People v. Moore, a division of this court interpreted "public employee" in section 18-9-110(2). 2013 COA 86, ¶ 13, 338 P.3d 348 ("Here, the statute is unambiguous and we therefore give its terms their plain meaning.") (cert. granted Mar. 24, 2014). Although the division interpreted a different subsection of the statute, as discussed below, Moore offers a relevant interpretation of the phrase at issue.
¶ 19 Third, several Colorado cases have defined "public employee," albeit in the immunity context. See, e.g., Henisse v. First Transit, Inc., 247 P.3d 577, 580 (Colo. 2011) (determining whether a privately employed RTD bus driver constituted a "public employee" under the Colorado Governmental Immunity Act) (cited in Moore, ¶ 15 ). For example, in Norton v. Gilman, 949 P.2d 565, 567 (Colo. 1997), our supreme court applied the common law test for determining whether a worker qualifies as an employee-the "alleged employer's right to control the details of performance"-to decide whether county department of social services employees were "public employees."
2. Public Building
¶ 20 For three reasons, we also conclude that the phrase "public building" is unambiguous.
¶ 21 First, section 18-9-110(1) makes clear that the statute applies to "any public building owned, operated, or controlled by the state, or any of the political subdivisions of the state or at any building owned, operated, or controlled by the federal government."
¶ 22 Second, Black's Law Dictionary at 1349, similarly defines "public building" as "[a] building that is accessible to the public," especially, "one owned by the government."
¶ 23 Third, many courts in other jurisdictions have also defined the phrase similarly, in a variety of contexts.[1]
¶ 24 Thus, because both operative phrases consist of words with plain and ordinary meanings, which have been interpreted by Colorado courts and courts in other jurisdictions, we do not begin with the obviousness prong, as in Lacallo . Instead, we must follow the approach of Heywood and start by weighing the evidence to apply the first plain error requirement-error. We do so de novo.
C. Law
¶ 25 In reviewing de novo a sufficiency-of-the-evidence challenge, the appellate court *912 determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
¶ 26 Rediger's sufficiency-of-the-evidence challenge requires statutory interpretation, which is a question of law we also review de novo. Bostelman v. People, 162 P.3d 686, 689 (Colo. 2007). As with any statutory interpretation, "the goal is effectuating the General Assembly's intent." Heywood, ¶ 20. Discerning that intent begins with the statutory language and gives "common words and phrases their ordinary meanings." Id. When a statute does not define commonly used terms, we may refer to dictionary definitions. People v. Connors, 230 P.3d 1265, 1267 (Colo. App. 2010). And "[i]f the statutory language is clear and unambiguous, we do not engage in further statutory analysis and apply the statute as written." People v. Vecellio, 2012 COA 40, ¶ 14, 292 P.3d 1004.
D. Application
¶ 27 Rediger argues that because the victim was not a "public employee" and the Academy was not a "public building," his conviction cannot stand under section 18-9-110(1). We agree.
1. Sufficiency of the Evidence
a. Public Employee
¶ 28 Relying on Moore, Rediger asserts that because the victim was "self-employed" and "owned the academy from which she drew her own salary," she was not a "public employee" under section 18-9110(1).
¶ 29 In Moore, ¶ 13, interpreting "public employee" under section 18-9-110(2), a division of this court concluded that "the statute is unambiguous," and "therefore g[a]ve its terms their plain meaning." Then the division determined that the phrase "public official or employee" applies "only to a victim who is either an official or an employee of a public entity." Id. It rejected the argument that "the legislature intended that the statute cover victims who were not public employees." Id. at ¶ 14. It also concluded that if the legislature had wanted to include "any person carrying out the duties or functions of a public employee," it could have done so by express language. Id. Because a private entity employed the victim, notwithstanding the entity's contract with the City and County of Denver, and "there [wa]s no indication in the record that the public entity controlled the victim's performance of her duties," the victim was not a public employee. Id.
¶ 30 The Attorney General acknowledges the holding in Moore that only people directly employed by a public entity are public employees, but argues that we "should decline to follow Moore's narrow interpretation." True, we are not bound by opinions from other divisions. See People v. Zubiate, 2013 COA 69, ¶ 48, 411 P.3d 757. Even so, we give "considerable deference" to precedent established by another division, People v. Smoots, 2013 COA 152, ¶ 20, 396 P.3d 53, and because we also agree with the reasoning in Moore, we conclude that "public employee" refers to a victim employed by a public entity.
¶ 31 Moore interpreted a different subsection of the statute. Yet, because "[w]e must ascribe the same meaning to the same words occurring in different parts of the same statute, unless it clearly appears therefrom that a different meaning was intended," Everhart v. People, 54 Colo. 272, 276, 130 P. 1076, 1078 (1913), this interpretation is informative.
¶ 32 As in Moore, ¶¶ 15-16, we apply the common law right-to-control test to determine whether the victim was employed by a public entity. See id. at ¶ 16 ("Similarly, here, the record would not support a finding that the victim was an employee of the City and County of Denver under the control test. The victim was an employee of a private security contractor."). In doing so, we also consider factors discussed in Norton, 949 P.2d at 567, including the right to hire and fire, and control over salary.
¶ 33 The record does not show that any governmental entity had the right to hire or fire Academy employees. And because the victim testified that she drew her salary from *913 the budget which she controlled, the state did not have any direct control over her salary.
¶ 34 Undaunted, the Attorney General asserts that because the Academy performed a "governmental function," a broad interpretation of "public employee" furthers the "clear legislative purpose." But having held the statute is unambiguous, we need not consider legislative purpose. See People v. Allen, 310 P.3d 83, 87 (Colo. App. 2010) ("If the statutory language is unambiguous, we need not resort to interpretive statutory construction rules because we presume that the General Assembly meant what it clearly said."), aff'd, 2013 CO 44, 307 P.3d 1102. And in any event, aside from a citation to the dissenting opinion in Moore, ¶ 21, the Attorney General offers no authority to support this assertion. Further, numerous federal courts have held that performing a public function and state regulation do not transform a private organization into a public entity.[2]
¶ 35 The Attorney General's argument that the victim "was an employee both of her non-profit company and of the public entities" relies on two cases: Veintimilla v. Dobyanski, 975 P.2d 1122, 1124 (Colo. App. 1997), and Perkins v. Reg'l Transp. Dist., 907 P.2d 672, 675 (Colo. App. 1995). Both are distinguishable on their facts.
¶ 36 The record does not show that the state maintained any control over hiring and firing of Academy employees. But in Veintimilla, the public entity retained some control over hiring and discharge, contributing to the division's conclusion that both the private and public entity controlled the employee's job performance. 975 P.2d at 1123-24. Similarly, in Perkins, the public entity retained the "contractual right to require [the private company] to remove promptly any employee whom [the public entity] consider[ed] unsuitable," and the private company could not "implement any aspect of performance under the agreement without written direction and authorization from" the public entity. 907 P.2d at 675. In contrast, although the victim testified that the state "check[ed] [thei]r curriculum," the record does not show any agreement between the Academy and a governmental entity that required the Academy to obtain authorization before "implement[ing] any aspect of [its] performance."
¶ 37 For these reasons, we conclude that the record does not contain sufficient evidence for any reasonable juror to conclude that the victim was a public employee. However, because on certiorari review of Moore our supreme court could adopt a different interpretation of "public employee," we take up the "public building" issue. Reversal would be required if either element was not supported by sufficient evidence.
b. Public Building
¶ 38 Rediger argues that because the Academy "was a privately owned, non-profit educational and treatment facility," it did not qualify as a "public building" under section 18-9-110(1). Having concluded that the victim was not a public employee, we reject the Attorney General's response that "the school building was operated, controlled, and used by a public employee in the discharge of her official duties."
¶ 39 Section 18-9-110(1) applies to public buildings "owned, operated, or controlled by the state." The record does not include any evidence of state control over the building itself, such as setting hours, establishing security procedures, or mandating public access. Still, the Attorney General argues that section 18-9-110(7) clarifies that "public building" includes "any premises being temporarily used by a public officer or employee in the discharge of his official duties." But *914 even if this subsection applies, the victim's use of the building was far from temporary.
¶ 40 Therefore, we further conclude that the record does not contain sufficient evidence for any reasonable juror to conclude that the Academy was a public building. Hence, the trial court erred by not sua sponte dismissing the section 18-9-110(1) charge, thereby satisfying the first requirement of plain error review.
2. Obviousness and Prejudice
¶ 41 As discussed above, the phrases "public employee" and "public building" consist of words with plain and ordinary meaning; both phrases have been interpreted by Colorado courts and other jurisdictions with significant uniformity. Thus, we further conclude that the error was obvious, meeting the second plain error requirement.
¶ 42 And where "the evidence is obviously insufficient for a rational trier of fact to find that an element of an offense has been proven beyond a reasonable doubt," the third requirement-whether the error casts serious doubt on the reliability of the judgment of conviction-is also satisfied. Heywood, ¶ 39.
¶ 43 Therefore, we must reverse the judgment of conviction on this charge and direct that it be dismissed.
III. Jury Instructions
A. Facts
¶ 44 Rediger was charged by information under section 18-9-109(2) as follows:
On or about December 4, 2008, David Delbert Rediger, on the premises of an educational institution or at or in any building or other facility being used by an educational institution, unlawfully and willfully impeded the staff or faculty of the institution in the lawful performance of their duties or impeded a student of the institution in the lawful pursuit of his or her educational activities through the use of restraint, abduction, coercion, or intimidation or when force and violence were present or threatened; in violation of section C.R.S. 18-9-109(2).
¶ 45 Before trial, the court ordered the prosecutor to prepare proposed jury instructions. It also directed the defense to file any objections within two days after the prosecution submitted its proposed instructions. Within his deadline, the prosecutor tendered proposed instructions, which included an elemental instruction under section 18-9-109(1)(b) rather than under section 18-9-109(2), as charged in the information. Although defense counsel confirmed that he had received the proposed instructions, he made no objections.
¶ 46 Before opening statements, the court instructed the jury under 18-9-109(1)(b):
The last element section in the crime of interference with staff or faculty or students of an educational institution, again, are: that the defendant, in this county and state, on or about December 4 of 2008, was on or near the premises or facilities of an educational institution and knowingly denied to the students, school officials, employees, or invitees, lawful use of the property or facilities of the institution.
Again, defense counsel did not object.
¶ 47 After the evidence closed and following an off-the-record discussion of the final instructions among defense counsel, the prosecutor, and the court, the following exchange occurred:
THE COURT: And, [defense counsel], you're satisfied with the instructions?
DEFENSE COUNSEL: Yes. Defense is satisfied.
¶ 48 Next, the court instructed the jury under section 18-9-109(1)(b), as follows:
The elements of the crime of Interference with Staff, Faculty or Students of an Educational Institution are:
1. That the defendant,
2. in the County of Conejos, State of Colorado, on or about December 4, 2008
3. was on or near the premises or facilities of any educational institution, and
4. knowingly,
5. denied to students, school officials, employees, or invitees,
6. lawful use of the property or facilities of the institution.
*915 B. Preservation and Standard of Review
¶ 49 Rediger concedes that because trial counsel did not object to the elemental instruction, this issue is unpreserved. Still, he seeks plain error review. The Attorney General responds that counsel did more than fail to object-by agreeing to the instructions, counsel invited any error, thus precluding review for plain error on direct appeal. Rediger replies that the lack of a strategic purpose precludes using the invited error doctrine to avoid plain error review.
¶ 50 In jury instruction appeals, invited error analysis has expanded from instructions tendered by the defense to mere acquiescence. Compare People v. Gregor, 26 P.3d 530, 533 (Colo. App. 2000) ("Thus, defendant's affirmative proposal with respect to one instruction and acquiescence in two others, which related directly to the first instruction, led to invited error here."), with People v. Butler, 251 P.3d 519, 523 (Colo. App. 2010) (Invited error does apply where "[t]he record shows that when the trial court proposed amending the jury instruction defining when a police officer acts under color of official authority by adding the phrase 'or search warrant executed,' [and] defense counsel responded, 'That's fine with me.' ").
¶ 51 Thus, this issue could be approached by choosing between invited error and plain error. But see People v. Gross, 2012 CO 60, ¶¶ 9-11, 287 P.3d 105 (distinguishing between error that "resulted from counsel's oversight" and error that resulted from counsel's "deliberate" acts). In any event, no Colorado criminal case has explained why deliberate acquiescence by defense counsel would not also constitute a waiver. We conclude that the waiver doctrine-which precludes further review on direct appeal-better describes trial counsel's affirmative conduct in agreeing to the instructions. To explain, we contrast invited error and waiver.
1. Invited Error
¶ 52 The invited error doctrine rests on the principle that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." People v. Zapata, 779 P.2d 1307, 1309 (Colo. 1989). This doctrine "prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." Horton v. Suthers, 43 P.3d 611, 618 (Colo. 2002) (internal quotation marks omitted). "Invited error most often arises in holding a defendant responsible for tendering or agreeing to a jury instruction later challenged on appeal." People v. Foster, 2013 COA 85, ¶ 26.
¶ 53 Here, Rediger's trial counsel expressly agreed to all of the final jury instructions: "Yes. Defense is satisfied." Our supreme court has recognized that invited error may apply where "one party expressly acquiesce[d] to conduct by the court or the opposing party." Horton, 43 P.3d at 619. But Rediger's emphasis on mere general acquiescence-even if accurate-does not preclude analyzing this affirmative conduct as a waiver.
2. Waiver
¶ 54 In United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court distinguished between "forfeited" and "waived" errors, noting that waiver occurs when a defendant specifically removes claims from the trial court's consideration by intentionally relinquishing or abandoning a known right. See Hinojos-Mendoza v. People, 169 P.3d 662, 668 (Colo. 2007) (quoting Olano, 507 U.S. at 733, 113 S.Ct. 1770, for the proposition that "[w]aiver is defined as the 'intentional relinquishment or abandonment of a known right' ").
¶ 55 Consistent with this definition, in People v. Rodriguez, 209 P.3d 1151, 1160 (Colo. App. 2008), aff'd, 238 P.3d 1283 (Colo. 2010), where defense counsel told the court that "the other daughter's testimony would be unnecessary if M.H. were permitted to respond, and [failed] to call the other daughter as a witness, defendant waived any claim of error arising from the other daughter's not testifying." Waiver has also been found when defense counsel chose not to object, despite an express invitation by the court. See, e.g., Valley v. People, 165 Colo. 555, 561, 441 P.2d 14, 16 (1968) ( "[F]ailure of counsel to object to the clarifying comments of the *916 trial court, coupled with the fact that counsel for [defendant] was a more or less active participant in this further instructing of the jury, amounts to a waiver of any rights afforded by C.R.S. 1963, 39-7-19.").
¶ 56 Divisions of this court have recognized the similarity between invited error and waiver. See, e.g., People v. Verbrugge, 998 P.2d 43, 45 (Colo. App. 1999) (treating "implied waiver" as synonymous with "invited error"), superseded by statute as stated in People v. Lowry, 160 P.3d 396 (Colo. App. 2007). Despite this similarity, the doctrines differ in an important way that is informative here.
¶ 57 Under People v. Stewart, 55 P.3d 107, 119 (Colo. 2002), where instructional error is "due to inadvertence or attorney incompetence, the reviewing court should apply the doctrine of plain error," but where "the omission is strategic, the invited error doctrine should be invoked." In contrast, where a defendant has waived a right, no error or omission is presented for an appellate court to review. Rodriguez, 209 P.3d at 1160 ; accord People v. Abeyta, 923 P.2d 318, 321 (Colo. App. 1996), superseded by rule as stated in People v. Roy, 252 P.3d 24 (Colo. App. 2010). No Colorado case has tempered waiver by distinguishing mere general acquiescence from other forms of affirmative conduct. Nor has any Colorado waiver case sought to intuit a strategic objective under the Stewart strategy-or-inadvertence inquiry.
¶ 58 Unlike the strategy-or-inadvertence limitation on invited error, waiver analysis "depend[s] on the right at stake." Olano, 507 U.S. at 733, 113 S.Ct. 1770. It begins by separating "alienable constitutional rights [from] rights in the nature of personal privilege." Zapata, 779 P.2d at 1309 (internal quotation marks omitted). Thus, "certain constitutional rights are given directly to the defendant and cannot be wielded by an attorney representative," including decisions about "whether to plead guilty, whether to testify, whether to waive a jury trial, or whether to take an appeal." People v. Bergerud, 223 P.3d 686, 693 (Colo. 2010).
¶ 59 As relevant here, defense counsel can waive the right to object to jury instructions by affirmative conduct. See United States v. Griffin, 84 F.3d 912, 924 (7th Cir. 1996) ("The right to object to jury instructions on appeal is waived if the record illustrates that the defendant approved of the instructions at issue. We do not require the defendant personally to waive objection, nor is the district court required to address the waiver question directly to the defendant.").
3. Application
¶ 60 For the following reasons, we conclude that waiver better describes trial counsel's affirmative acquiescence:
• Acquiescence does not fit the classic definition of invited error-deliberately "inject[ing]" an error. Compare Gross, ¶¶ 8-10 (Invited error prohibited appellate review "of the initial aggressor jury instruction requested by [defendant's] own counsel."), with People v. Barraza, 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947, 951 (Cal. 1979) (No invited error where "[d]efense counsel's remark, 'It is immaterial to me,' suggest[ed], to the contrary, that the acquiescence derived from neglect, mistake, or inattention rather than from a deliberate tactical choice.").
• But acquiescence does fit the classic definition of waiver-the "intentional relinquishment or abandonment of a known right." Olano, 507 U.S. at 733, 113 S.Ct. 1770 (internal quotation marks omitted). In other words, "waiver involves a party's intentional (and often strategic) choice not to invoke a right." United States v. Adigun, 703 F.3d 1014, 1021 (7th Cir. 2012).
• Despite Rediger's emphasis on his trial counsel's mere acquiescence, many courts have treated any affirmative conduct by defense counsel as waiver. See, e.g., United States v. Eisom, 585 F.3d 552, 556 (1st Cir. 2009) ("At the disposition hearing, defense counsel unambiguously withdrew this objection. [When the court inquired], counsel replied: 'That's correct.' "); United States v. Hansen, 434 F.3d 92, 101 (1st Cir. 2006) ("[Defendant], through counsel, not only failed to object to the court's omission of *917 his proposed multiple conspiracy instruction, but also affirmatively stated 'I am content' after the district court instructed the jury."); United States v. Richardson, 238 F.3d 837, 841 (7th Cir. 2001) (Defendant waived an objection to a sentencing enhancement where at sentencing the court asked the defendant's lawyer whether he had an objection to the enhancement and the lawyer said "no.").
• Applying waiver to affirmative conduct furthers "society's interests in maintaining the integrity of the criminal justice system, and the State's interests in preserving the finality of criminal convictions." People v. Wiedemer, 852 P.2d 424, 440 (Colo. 1993). Doing so also recognizes that "[t]he reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences." United States v. Mechanik, 475 U.S. 66, 72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ; accord People v. Sepulveda, 65 P.3d 1002, 1008 (Colo. 2003) (The "social costs of reversal and retrial" include that "witnesses' memories fade, witnesses move away and victims hesitate to testify again."). Applying waiver based on affirmative conduct also furthers the doctrine's goal of prohibiting a defendant from raising on appeal an alleged error that defense counsel withdrew from the trial court's consideration. See Olano, 507 U.S. at 732, 113 S.Ct. 1770.
¶ 61 Having concluded that defense counsel's affirmative acquiescence can properly be described as a waiver, we turn to the waiver limitation based on the nature of the right and any other basis for avoiding waiver. For the following reasons, we discern no basis for Rediger to avoid waiver on direct appeal.
• Whether to object to a jury instruction is a decision for defense counsel, not the defendant. See People v. Rector, 248 P.3d 1196, 1203 (Colo. 2011).
• In this case, defense counsel was informed of the defective instruction because he admitted having received the prosecutor's proposed instructions, and neither expressed any uncertainty nor asked for more time to review them.
• Defense counsel is presumed to be knowledgeable on the law. See People v. Gonzales, 37 Colo.App. 8, 9, 543 P.2d 72, 73 (1975) ("(W)e ... presume that trial counsel, appointed or retained, conscientiously seek, within the limits of preparation, ability, knowledge of the law, and skill at trial, to accomplish a successful result for his client." (internal quotation marks omitted)).
• And "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." State v. Kitchens, 299 Conn. 447, 10 A.3d 942, 965-66 (2011).
• Had Rediger's trial counsel injected an error, reversal and retrial could have been avoided if the trial court acted sua sponte. But because defense counsel removed a potential error from consideration by affirmatively acquiescing, the trial court was less likely to be alerted to a potential error.
¶ 62 Given all this, one might wonder whether Rediger is without a remedy if he can show that his trial counsel lacked any strategic purpose in waiving any objection to the instructions. An ineffective-assistance-of-counsel claim might afford relief, subject to meeting the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But any attempt to satisfy the first prong (professional competence) by showing that his counsel's waiver was without any strategic basis would be ill-suited on direct appeal.
*918 Even if the trial record reflects a seemingly unusual or misguided action by counsel, it may not reflect whether counsel had a sound strategic motive or took the action because his alternatives were even worse. Counsel's reasons for omissions are even less likely to be reflected in the trial record.
Ardolino v. People, 69 P.3d 73, 77 (Colo. 2003) (citation omitted).
¶ 63 In contrast, a postconviction evidentiary hearing creates "a proper record on appeal," that may "require explanations by trial counsel about alleged incompetent acts or omissions, or expert testimony as to the requisite standard of care in the applicable legal community." People v. Thomas, 867 P.2d 880, 886 (Colo. 1994). As well, seeking postconviction relief-rather than plain error review on direct appeal-would benefit Rediger because, as to the second (prejudice) prong of Strickland, "[t]he plain error standard requires that an error impair the reliability of the judgment of conviction to a greater degree." Hagos v. People, 2012 CO 63, ¶ 1, 288 P.3d 116.
¶ 64 In sum, by engaging in affirmative conduct, Rediger's trial counsel waived instructional error, if any. And by doing so he also waived relief based on the alleged constructive amendment resulting from the challenged instruction.
IV. Conclusion
¶ 65 We reverse the judgment of conviction on the section 18-9110(1) count, direct that this count be dismissed with prejudice, and vacate the sentence imposed on this count. We affirm the judgment of conviction on the section 18-9-109(2) count.
JUDGE DAILEY concurs.
JUDGE RICHMAN specially concurs.

See, e.g., Gallick v. Novotney, 124 Ill.App.3d 756, 79 Ill.Dec. 942, 464 N.E.2d 846, 849 (1984) (determining whether a store was a public building for purpose of liability under Illinois's statute regulating facilities for disabled people); Griffin v. City of Detroit, 178 Mich.App. 302, 443 N.W.2d 406, 407-08 (1989) (determining whether low-income housing facility was a public building for purpose of governmental immunity); City of Austin v. Whittington, 384 S.W.3d 766, 791 (Tex. 2012) (determining whether a parking garage was a public building).

See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (Even though "the education of maladjusted high school students is a public function," because the "State had not undertaken to provide education for students who could not be served by traditional public schools," that a "private entity perform[ed] a function which serve[d] the public d[id] not make its acts state action."); Mentavlos v. Anderson, 249 F.3d 301, 314-16 (4th Cir. 2001) (Because the mission of the "Citadel is to educate civilian students and produce community leaders, which has never been held to be the exclusive prerogative of a State," upper-class cadets were not state actors for purposes of a 42 U.S.C. § 1983 (2012) action.); Chrisman v. Sisters of St. Joseph of Peace, 506 F.2d 308, 314 (9th Cir. 1974) (The "exemption from taxes and regulation by the state do not provide a basis for a 1983 suit.").