Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 9, 2019

**2019 CO 99**

**No. 16SC269, *Rail v. People*—Criminal Law—Objections and Waiver—Verdicts or Findings—Special Interrogatories.**

A jury found the defendant guilty of sexual assault on a child.  In response to a special interrogatory, the jury also found that the defendant committed the offense as part of a pattern of abuse and that the People proved each of the listed incidents of sexual contact.  However, in response to a unanimity interrogatory that the trial court failed to read aloud, the jury indicated that these same incidents of sexual contact were not proved.  The defendant contends that his conviction amounts to structural error, requiring reversal under *Sanchez v. People*, 2014 CO 29, 325 P.3d 553.

The supreme court holds that under *People v. Rediger*, 2018 CO 32, 416 P.3d 893, the defendant did not waive his claim because he had no reason to be aware of the inconsistency.  The supreme court also holds that *Sanchez* does not compel reversal because, unlike in that case, the jury here returned a guilty verdict reflecting its unanimous finding of guilt beyond a reasonable doubt, and any ambiguity in that verdict was resolved through individual polling of the jury.  Accordingly, the supreme court affirms the judgment of the court of appeals.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

## 2019 CO 99

---

## Supreme Court Case No. 16SC269
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA392

---

### Petitioner:

Paul Lacey Rail,

v.

### Respondent:

The People of the State of Colorado.

---

### Judgment Affirmed
*en banc*
December 9, 2019

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Anne T. Amicarella, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
John T. Lee, Senior Assistant Attorney General
*Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

¶1     A jury found Defendant Paul Lacey Rail guilty of sexual assault on a child. In response to a special interrogatory, the jury also found, unanimously and beyond a reasonable doubt, that Rail committed the offense as part of a pattern of abuse and that the People had proved each of the listed incidents of sexual contact, including "[a]ll of the alleged incidents of sexual contact" testified to by the victim. However, in response to a separate unanimity interrogatory, the jury indicated that these same incidents of sexual contact (excluding one that appeared only on the pattern of abuse interrogatory) were "[n]ot [p]roved." Rail argues that, under *Sanchez v. People*, 2014 CO 29, 325 P.3d 553, this inconsistency requires reversal of his conviction for sexual assault on a child as part of a pattern of abuse.

¶2     We disagree. Unlike in *Sanchez*, the jury here returned a unanimous verdict of guilt beyond a reasonable doubt. Moreover, any ambiguity in this verdict created by the jury's response on the unanimity interrogatory was resolved by individual polling of the jurors, each of whom confirmed their intent to find the defendant guilty of sexual assault on a child as part of a pattern of abuse, and their express findings that the People had proved all the alleged incidents of sexual contact beyond a reasonable doubt. We therefore affirm the judgment of the court of appeals upholding Rail's conviction, albeit based on somewhat different reasoning.

# I. Facts and Procedural History

¶3 In 2012, the State charged Rail with two counts of sexual assault on a child[1] as to B.H. and her younger sister, C.H.; two counts of sexual assault on a child by one in a position of trust[2] as to victims B.H. and C.H.; and sexual assault on a child conducted as part of a pattern of abuse[3] as to B.H.[4]

¶4 At trial, B.H. testified that starting when she was about five years old and for several years thereafter, Rail, her great uncle, showed her sexually explicit photos and subjected her to sexual contact. B.H. testified that many of these incidents occurred in the basement of B.H.'s great-grandmother's house, where Rail lived at the time. B.H. testified about roughly twenty-five incidents, including one that took place at an Embassy Suites hotel.

¶5 After the close of evidence, the trial court instructed the jury. As relevant here, the court explained that to find Rail guilty of either sexual assault on a child

---

[1] § 18-3-405(1), C.R.S. (2019).

[2] § 18-3-405.3(1), (2)(a), C.R.S. (2019).

[3] The pattern of abuse sentence enhancer elevates the offense of sexual assault on a child to a class three felony. § 18-3-405(1), (2)(d). A "pattern of sexual abuse" is defined as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." § 18-3-401(2.5), C.R.S. (2019).

[4] The jury acquitted Rail of all charges concerning C.H. Because those charges and corresponding jury verdicts are not at issue here, we do not discuss them further.

("SAOC") or sexual assault on a child by one in a position of trust ("SAOC-POT"), the jury must unanimously find, beyond a reasonable doubt, that Rail committed the same one or more acts of sexual contact involving B.H., or that he committed all the acts of sexual contact to which B.H. testified. The court further instructed the jury that if it found Rail guilty of either SAOC or SAOC-POT, then it must indicate on a special interrogatory form which act or acts of sexual assault it found to have been proved beyond a reasonable doubt ("the unanimity interrogatory"). Finally, the court instructed the jury that if it found Rail guilty of SAOC, it must determine whether Rail committed the offense as a pattern of abuse (defined as "the commission of two or more separate incidents of sexual contact with the same child").

¶6 After instructing the jury, the trial court introduced the verdict and interrogatory forms at issue.

¶7 First, the court introduced the general verdict form for the SAOC charge, explaining that the foreperson should sign either the "guilty" or "not guilty" line on the form. Next, the court introduced the pattern of abuse interrogatory, which stated that it was to be completed only if the jury found the defendant guilty of

4

SAOC.[5]  This interrogatory asked whether the defendant committed SAOC "as a pattern of sexual abuse" and listed specific alleged incidents of abuse involving B.H. (including the Embassy Suites incident).  The fifth listed incident asked whether the People had proved "[a]ll of the alleged incidents of sexual contact which were testified to by [B.H.]."  The form required the jury foreperson to mark whether each incident had been "[p]roved" or "[n]ot [p]roved."

¶8     After introducing the pattern of abuse interrogatory, the court stated, "The next case or the next interrogatory that I have or verdict form that I have is pretty much the same.  *It deals with the charge of sexual assault on a child by one in a position of trust*."  (Emphasis added.)

¶9     The court then introduced the general verdict form for the SAOC-POT charge, stating, "Again, the *first page* [i.e., the general verdict form] is a guilty–not guilty finding.  'I' is not guilty.  'II' is guilty."  (Emphasis added.)

¶10     Immediately after introducing the general verdict form, the court stated, "*Then we have the special interrogatory for this*," and introduced the disputed

---

[5] We note that in the record, the pattern of abuse interrogatory is stapled to the general verdict form for SAOC.

unanimity interrogatory.[6]  (Emphasis added.)  This interrogatory listed the same incidents as the pattern of abuse interrogatory, excluding the Embassy Suites incident.[7]  Like the pattern of abuse interrogatory, the unanimity interrogatory required the jury foreperson to mark whether each incident had been "[p]roved" or "[n]ot [p]roved."

¶11    After deliberations, the jury returned the verdict forms and interrogatories. As relevant here, the jury indicated on the SAOC verdict form that it found Rail guilty of sexual assault on a child.  On the related pattern of abuse interrogatory, the jury found, unanimously and beyond a reasonable doubt, that Rail had committed SAOC as part of a pattern of abuse and that the People had proved all the listed incidents of sexual contact, including "[a]ll of the alleged incidents of sexual contact testified to by [B.H.]."  The jury acquitted Rail of the position of trust charge, marking "NOT GUILTY" on the SAOC-POT verdict form.  Finally, on the

---

[6] We note that in the record, this unanimity interrogatory is stapled to the SAOC-POT verdict form.  Given the trial court's reference to the SAOC-POT verdict form as the "first page" of this set of forms, *see supra,* ¶ 9, we infer that the unanimity interrogatory was stapled to the SAOC-POT verdict form when presented to the jury, even though the interrogatory stated that it applied to both the SAOC charge and the SAOC-POT charge.

[7] The trial court allowed the jury to consider the Embassy Suites incident only with respect to the pattern of abuse sentence enhancer.

unanimity interrogatory attached to the SAOC-POT verdict form, the jury marked all four of the listed incidents "[n]ot [p]roved."

¶12 Notably, the jury's responses on the unanimity interrogatory (indicating that none of the listed incidents had been proved) were inconsistent with both the jury's guilty verdict on the SAOC charge and its responses on the pattern of abuse interrogatory (unanimously finding that the same incidents, plus the Embassy Suites incident, had been proved beyond a reasonable doubt). But this inconsistency did not immediately come to light.

¶13 Upon receiving the verdict forms, the court first announced that the jury found Rail not guilty of SAOC-POT. Next, it announced that the jury found Rail guilty of SAOC. From there, the court addressed the pattern of abuse interrogatory, announcing that the jury found that the People proved beyond a reasonable doubt that the SAOC charge was committed as part of a pattern of sexual abuse and, further, that the jury unanimously found that all the incidents of alleged abuse listed on the pattern of abuse interrogatory had been proved beyond a reasonable doubt. The court read aloud each of the five listed incidents and, after each one, announced that the jury had found that incident "proved," including "[a]ll of the alleged incidents of sexual contact which were testified to by [B.H.]." However, in reading aloud the verdict forms, the court failed to announce the jury's responses on the unanimity interrogatory, which stated that

7

these same incidents (excluding the Embassy Suites incident) were "[n]ot [p]roved."

¶14 The jury foreperson confirmed that these were the unanimous verdicts of all twelve jury members. The court then polled each juror individually, asking "were these and are these your verdicts?" Each juror responded affirmatively. Finally, the court asked whether "either counsel wish[ed] the jury to be polled any further." Both the prosecutor and Rail's counsel declined. The court accepted the jury's verdicts and sentenced Rail to eight years to life in the custody of the Department of Corrections.

¶15 Rail appealed his conviction. As relevant here, Rail argued for the first time that the jury's responses on the unanimity interrogatory were inconsistent with its guilty verdict on the SAOC charge, rendering that verdict ambiguous and thus legally insufficient. Relying solely on this court's decision in *Sanchez*, Rail argued that this inconsistency gave rise to structural error requiring reversal of his conviction.

¶16 A division of the court of appeals, with Judge J. Jones specially concurring, rejected Rail's contention and affirmed his convictions. *People v. Rail*, 2016 COA 24, ¶¶ 2, 78, __ P.3d __.

¶17 First, the division held there was no structural error, concluding that *Sanchez* was distinguishable. *Id*. at ¶¶ 2, 11–19. In *Sanchez*, the defendant's conviction for

8

SAOC as part of a pattern of abuse rested on "nothing more than factual findings of two incidents of sexual contact against the same victim." *Rail*, ¶ 17 (quoting *Sanchez*, ¶ 13, 325 P.3d at 557–58). Thus, the division reasoned, reversal in that case rested on the lack of a guilty verdict. *Id.* at ¶ 19. By contrast, the jury here returned a guilty verdict on the SAOC charge and found that the pattern enhancer had been proved; moreover, the jury confirmed the verdicts when polled. *Id.* at ¶ 18.

¶18 The division majority also concluded that Rail waived any claim regarding the inconsistent interrogatories by failing to raise the inconsistency before the jury was discharged, citing to *People v. Cordova*, 199 P.3d 1, 4 (Colo. App. 2007), and drawing guidance from section 13-71-140, C.R.S. (2019) (providing that the court "shall not declare a mistrial or set aside a verdict based upon allegations of any irregularity in selecting, summoning, and managing jurors," unless the aggrieved party "objects to such irregularity . . . as soon as possible after its discovery"). *Rail*, ¶¶ 39–40.

¶19 The division majority reasoned that even if section 13-71-140 did not compel the conclusion that *Cordova*'s "waiver by silence" rule controls, the court of appeals' opinion in *People v. Rediger*, 2015 COA 26, 411 P.3d 907, "tip[ped] the scales." *Rail*, ¶ 41. In *Rediger*, the defense acknowledged in response to the trial court's query that it was "satisfied" with the jury instructions. *Rediger*, ¶¶ 45–47,

9

411 P.3d at 914. When Rediger argued on appeal that an incorrect elemental instruction tendered by the prosecution resulted in a constructive amendment of his charging document, the court of appeals concluded that he had waived the claim through his counsel's "affirmative acquiescence" to the incorrect instruction. *Id.* at ¶¶ 55, 57, 60, 411 P.3d at 915–17.

¶20 Here, the division majority observed that, like defense counsel in *Rediger,* Rail's counsel "did more than fail to object." *Rail*, ¶ 41 (quoting *Rediger*, ¶ 49, 411 P.3d at 915). Specifically, counsel "affirmatively declined the trial court's offer to poll the jury further," which the division majority concluded would have brought to light the jury's inconsistent answers to the unanimity interrogatory. *Id.* The court explained that, as in *Rediger*, defense counsel's "affirmative conduct obviate[d] further inquiry" into whether counsel declined the court's offer as a matter of strategy or inadvertence. *Id.*

¶21 Because it concluded that Rail waived his inconsistency claim, the division majority declined to consider whether any error was plain. *Id.* at ¶ 42.

¶22 In a special concurrence, Judge J. Jones agreed that the claim was waived, though on different grounds from the majority. *Id.* at ¶¶ 78, 83 (J. Jones, J., specially concurring). Judge J. Jones opined that merely declining the trial court's offer to poll the jury further did not constitute waiver because, at the time the court made the offer, "there had been no other verdicts read in open court as to which

10

the jury could be polled." *Id.* at ¶ 81. But Judge J. Jones reasoned that defense counsel knew or should have known that the trial court had not read the unanimity form in open court. *Id.* at ¶ 82. He concluded that counsel's failure to bring such an irregularity to the court's attention amounted to waiver. *Id.* at ¶¶ 82–83.

¶23 Even assuming Rail did not waive the claim, Judge J. Jones concluded that reversal was not warranted. *Id.* at ¶ 84. He agreed with the majority that the error was not structural. *Id.* Further, under plain error review, Judge J. Jones was unconvinced that any error, even if obvious, cast serious doubt on the reliability of the judgment, given that the jury confirmed its verdicts when polled. *Id.* at ¶ 85. The verdicts, he reasoned, reflected the jury's "unanimous conclusion that the People had proved all of the elements of that charge beyond a reasonable doubt, and . . . that the People had proved beyond a reasonable doubt five acts of sexual conduct." *Id.*

¶24 We granted Rail's petition for a writ of certiorari to review (1) whether he waived appellate review of his claim by failing to request further polling of the

jury, and (2) whether this court's decision in *Sanchez* requires reversal of his conviction.[8]

## II. Analysis

¶25 At the outset, we note that Rail does not contend that reversal is required because the jury returned logically inconsistent verdicts. Verdicts are legally and logically inconsistent (or "mutually exclusive") where essential elements of two guilty verdicts logically negate each other. *People v. Delgado*, 2019 CO 82, ¶ 12, 450 P.3d 703, 705. We have noted that courts generally agree that such verdicts

---

[8] Specifically, we granted certiorari review on the following issues:

1. Whether a defendant waives appellate review by failing to request further polling of the jury when polling affirms the court's reading of the jury's guilty verdict on the charge of sexual assault on a child ("SAOC") and of the special interrogatory reflecting the jury's findings that acts establishing a pattern of sexual abuse had been proven, but the trial court fails to read aloud the unanimity interrogatory which reflected that the jury found that none of the acts to establish the SAOC charge had been proven.

2. Whether, under *Sanchez v. People*, 2014 CO 29, reversal is required when a jury unanimously finds that none of the alleged acts establishing SAOC were proven yet the trial court nonetheless directs a guilty verdict as to SAOC because the jury found that the same acts were proven to establish a pattern of sexual abuse.

12

"should not be sustained." *Id.* at ¶ 14, 450 P.3d 705–06 (quoting *People v. Frye*, 898 P.2d 559, 569 n.13 (Colo. 1995)).

¶26 But here, the jury did not return legally and logically inconsistent *guilty* verdicts: although it unanimously found Rail *guilty* of SAOC, it concluded that Rail was *not guilty* of SAOC-POT. Such verdicts are not inconsistent in any event because the jury's finding that Rail committed SAOC does not logically exclude a determination that he was not acting in a position of trust.

¶27 Instead, Rail focuses on the jury's responses on the unanimity interrogatory (finding the listed incidents of alleged sexual contact "[n]ot [p]roved"), which appear inconsistent with both the jury's guilty verdict on the SAOC charge and its responses on the pattern of abuse interrogatory (unanimously finding that the State proved all the alleged acts of sexual contact with B.H. beyond a reasonable doubt). In short, the question is whether, under the circumstances here, the jury's unanimity interrogatory responses nullify its verdict finding Rail guilty of SAOC as part of a pattern of abuse.

¶28 Rail argues that he did not waive his claim because he never intentionally relinquished his constitutional right to a trial by jury, which includes the right to a unanimous jury verdict. He further argues that the jury's responses on the unanimity interrogatory (finding that the listed incidents of sexual contact were "[n]ot [p]roved") rendered its guilty verdict on the SAOC charge ambiguous and

13

therefore invalid. He contends that his conviction under such circumstances constitutes structural error under *Sanchez* and requires reversal. Finally, although he did not raise the issue in his petition for certiorari review, Rail now also argues in the alternative that his claim warrants reversal under plain error review.

¶29 First, we address whether Rail waived his claim. Because nothing in the record suggests that Rail's counsel was aware of the inconsistency and nevertheless intentionally chose not to raise the issue, we conclude that Rail did not waive his claim.

¶30 Next, we analyze Rail's argument that *Sanchez* compels reversal of his conviction here. We conclude it does not. In *Sanchez*, the jury acquitted the defendant of SAOC, and the trial court nevertheless entered judgment of conviction based solely on the jury's factual findings of two incidents of sexual contact involving the same victim. *Sanchez*, ¶ 13, 325 P.3d at 558. We reversed the conviction there because the record revealed no unanimous verdict of guilt on the elements of SAOC. *Id.* at ¶¶ 2, 20, 325 P.3d at 554–55, 560. But unlike in *Sanchez*, the conviction for SAOC in this case was not structural error. Rail's jury returned a guilty verdict on the SAOC charge, reflecting its unanimous finding of guilt beyond a reasonable doubt on the elements of that offense. To the extent the jury's responses on the unanimity interrogatory suggested any ambiguity in that guilty verdict, such ambiguity was resolved during polling when the jury confirmed

14

both its guilty verdict and its unanimous finding that the State had proved all the alleged incidents of sexual contact beyond a reasonable doubt. We therefore conclude that *Sanchez* is distinguishable and does not compel reversal of Rail's conviction.

¶31 Finally, and even though Rail did not raise the argument in his petition for certiorari review, we conclude that reversal is not warranted under plain error review either. Accordingly, we affirm the judgment of the court of appeals, albeit based on somewhat different reasoning.

## A. Rail Did Not Waive His Claim.

¶32 We disagree with the People and the court of appeals that Rail waived appellate review of his claim.

¶33 Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Forfeiture, by contrast, is the "failure to make the timely assertion of a right." *Id.*; *see also United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) ("[W]aiver is accomplished by intent, [but] forfeiture comes about through neglect." (quoting *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000))). The distinction between waiver and forfeiture is important because waiver extinguishes error (and therefore appellate review), but mere forfeiture does not. *Olano*, 507 U.S. at 733; Crim. P. 52(b) ("Plain errors or defects affecting

15

substantial rights may be noticed although they were not brought to the attention of the court.").

¶34 Here, the People contend, and the court of appeals concluded, that Rail waived his claim by failing to object to the jury's inconsistent responses on the unanimity interrogatory and by declining the court's offer to poll the jury further (which could have brought the inconsistency to light).

¶35 But after the division issued its opinion in this case, we overturned the court of appeals' decision in *Rediger*—the case that "tip[ped] the scales," *Rail*, ¶ 41, for the majority in favor of concluding that a waiver occurred here. *People v. Rediger*, 2018 CO 32, ¶ 4, 416 P.3d 893, 897. We concluded in *Rediger* that "a showing of waiver requires some evidence, beyond mere acquiescence, that the defendant *intentionally* relinquished a *known* right or privilege." *People v. Smith*, 2018 CO 33, ¶ 17, 416 P.3d 886, 890–91 (citing *Rediger*, ¶¶ 39–44, 416 P.3d at 902–03). Notably, the record in that case revealed no evidence that Rediger intended to relinquish his right to be tried in conformity with the charges set forth in the charging document. *Rediger*, ¶ 42, 416 P.3d at 902. Indeed, nothing in the record suggested that Rediger was even aware of a discrepancy between the People's tendered instructions and the charging document. *Id.* at ¶ 35, 416 P.3d at 902. Under such circumstances, we concluded that defense counsel's general acquiescence to those instructions did not amount to waiver. *Id.* at ¶¶ 42–44, 416 P.3d at 902–03; *see also*

16

*Smith*, ¶ 18, 416 P.3d at 891 (similarly concluding that counsel's statement that the jury instructions were "acceptable" did not reflect intent to relinquish a known variance claim, where no evidence suggested that counsel was aware of the variance and chose for some reason, tactical or otherwise, not to object).

¶36 Here, in announcing the verdicts, the trial court failed to read aloud the jury's responses to the unanimity interrogatory. Although Rail's counsel was aware that the jury had been given the unanimity interrogatory and certainly could have asked the trial court to read the jury's responses to it, counsel had no basis to believe that the jury's responses to the unanimity interrogatory were inconsistent with its other findings as announced by the court. In particular, after hearing the jury's unanimous findings on the pattern of abuse interrogatory that the People had proved all the alleged incidents of sexual contact beyond a reasonable doubt, why would counsel have reason to think the unanimity interrogatory might suggest otherwise? Because nothing in the record here indicates that Rail's counsel was aware of any inconsistency, we cannot conclude that counsel intentionally relinquished a known claim by not insisting that the court read the responses to both interrogatories or by declining the court's offer to poll the jury further. *See Rediger*, ¶¶ 42–45, 416 P.3d at 902–03; *see also Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo. 1984) (acknowledging that a waiver may be express or implied but perceiving no waiver because defendant's

17

failure to raise an issue was not "the type of unequivocal act indicative of a waiver" and did not "clearly manifest[] any intent by [respondent] to relinquish her claim").[9]

¶37 Consistent with our recent decisions in *Rediger* and *Smith*, we therefore hold that Rail did not waive his claim by failing to raise the inconsistency with the trial court or declining the court's offer to poll the jury further.

## B. *Sanchez* **Does Not Compel Reversal Here.**

¶38 Turning to the merits of his claim, Rail argues that under *Sanchez* his conviction amounted to structural error, requiring reversal. We disagree. As the court of appeals correctly explained, *Sanchez* is distinguishable. *Rail*, ¶¶ 2, 18.

¶39 In *Sanchez*, the jury returned a verdict of *not* guilty, acquitting the defendant of SAOC. *Sanchez*, ¶ 8, 325 P.3d at 556. The jury nevertheless indicated on a related pattern of abuse verdict form that the prosecution had proved two of six incidents of alleged touching, even though the jury had been instructed to complete that form only if it found the defendant guilty of SAOC. *Id*. at ¶¶ 7–8, 325 P.3d at 556. Based on the pattern of abuse verdict form, the trial court entered judgment of

---

[9] We also agree with Judge J. Jones's observation that merely declining further polling could not amount to waiver here, given that "there had been no other verdicts read in open court as to which the jury could be polled." *Rail*, ¶ 81 (J. Jones, J., specially concurring).

18

conviction for SAOC as part of a pattern of abuse, despite the jury's not guilty verdict on the SAOC charge. *Id.* The court of appeals affirmed. *Id.* at ¶ 1, 325 P.3d at 554.

¶40 We reversed. *Id.* at ¶¶ 2, 20, 325 P.3d at 554–55, 560. The prosecution did not dispute the absence of any jury verdict in that case expressly finding the defendant guilty of the crime of SAOC. *Id.* at ¶ 17, 325 P.3d at 559. Instead, it argued that the court could infer from the responses on the pattern of abuse interrogatory form that the jury meant to find Sanchez guilty of committing the elements of SAOC in those two incidents. *Id.* We rejected this argument. *Id.* As drafted, the pattern of abuse verdict form did not support a judgment of conviction. *Id.* At most, it reflected the jury's finding of two incidents of sexual contact, but it offered the jury no opportunity to find that the defendant committed all the elements of SAOC. *Id.* at ¶¶ 2, 20, 325 P.3d at 554, 560. Simply put, there was no unanimous verdict of guilt beyond a reasonable doubt in that case. And because "entry of a judgment of conviction for a crime not supported by a unanimous verdict beyond a reasonable doubt rises to the level of structural error," we reversed the defendant's conviction. *Id.* at ¶¶ 19–20, 325 P.3d at 560.

¶41 This case presents a different scenario involving a conflict between a jury's general verdict and its responses to a special interrogatory. The jury found Rail guilty of SAOC. In addition, on a related pattern of abuse interrogatory, the jury

found that Rail's offense was committed as part of a pattern of abuse and that the People had proved all the alleged incidents of sexual contact. Notably, the jury acquitted Rail of SAOC-POT with respect to the same victim. Then, on a unanimity interrogatory apparently attached to the SAOC-POT verdict form but applicable to the SAOC charge as well, the jury indicated that the same incidents (excluding the Embassy Suites incident, which appeared only on the pattern of abuse interrogatory) were "[n]ot [p]roved."

¶42 Unlike in *Sanchez*, the verdicts here reflect a unanimous finding of guilt beyond a reasonable doubt. First, and most obvious, the jury here returned a *guilty* verdict on the SAOC charge, reflecting its finding that the People proved all the elements of that offense. Second, the pattern of abuse interrogatory associated with that count reflected the jury's finding that the People proved beyond a reasonable doubt that the sexual assault was committed as a pattern of sexual abuse. Importantly, that interrogatory reflected the jury's unanimous, express findings that the People proved beyond a reasonable doubt each of the alleged incidents of sexual contact, including "[a]ll of the incidents testified to by [B.H.]."

¶43 To the extent that the jury's responses on the unanimity interrogatory were inconsistent with its SAOC guilty verdict and pattern of abuse interrogatory, the record strongly suggests that these responses can be attributed to the manner and sequence in which the verdict forms and interrogatories were introduced and the

20

fact that the unanimity interrogatory was apparently attached to the SAOC-POT verdict form. These circumstances likely led the jury to mistakenly associate the unanimity interrogatory only with the SAOC-POT charge even though it also applied to the SAOC charge. The form instructed the jury to answer the interrogatory if it found Rail guilty of either SAOC or SAOC-POT. Having found Rail *guilty* of SAOC, the jury filled out the interrogatory (per the instructions). But given the trial court's explanation of the interrogatory (linking it with the SAOC-POT verdict form), and given that the interrogatory was apparently attached to the SAOC-POT verdict form, the jury may well have understood the questions on the interrogatory to apply specifically to that charge. Having found Rail *not* guilty of SAOC-POT, the jury's responses on the attached unanimity interrogatory may reflect its conclusion that Rail did not commit the listed acts while acting in a position of trust. So viewed, the responses are not inconsistent with the jury's other verdicts. Although this conclusion necessarily indicates that the jury misunderstood the instructions on the unanimity interrogatory, it also reconciles the jury's seemingly inconsistent responses.

¶44 Regardless, any lingering ambiguity in the jury's SAOC guilty verdict was resolved here by polling the jurors. *See United States v. Harlow*, 444 F.3d 1255, 1267 (10th Cir. 2006) ("Polling [the jury] is one means of ensuring unanimity of a verdict." (quoting *United States v. Morris*, 612 F.2d 483, 489 (10th Cir. 1979))). The

21

court read aloud not only the jury's guilty verdict but also its specific findings with respect to each of the five listed incidents of sexual contact, announcing that the jury unanimously found each incident "[p]roved," including "[a]ll of the alleged incidents of sexual contact which were testified to by [B.H.]." Through individual polling, each juror thus confirmed the jury's intent to find the defendant guilty of SAOC as part of a pattern of abuse and the jury's express findings that the People proved all the alleged incidents of sexual contact. We therefore conclude that *Sanchez* is distinguishable. Unlike that case, Rail's SAOC conviction did not amount to structural error. Accordingly, reversal is not warranted under *Sanchez*.

## C. Reversal Is Not Required Under Plain Error Review.

¶45 In both the court of appeals and his petition for certiorari review, Rail relied solely on *Sanchez* to argue that his conviction amounted to structural error. Indeed, based on Rail's petition, we granted certiorari review on the narrow question of whether *Sanchez* requires reversal. In his merits briefing, however, Rail now also argues that reversal is warranted under plain error review. Exercising our discretion to respond to Rail's new argument, we nevertheless agree with Judge J. Jones's special concurrence that reversal for plain error is not warranted. *Rail*, ¶¶ 84–85 (J. Jones, J., specially concurring).

¶46 Plain error is error that is both obvious and substantial; reversal for plain error is required only when such error so undermines the fundamental fairness of

22

the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120; *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). But even assuming any error here was obvious (because the trial court had the verdict forms before it), under the circumstances of this case—and particularly in light of the polling of the jury discussed above— we are unpersuaded that any inconsistency in the unanimity interrogatory casts serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14, 288 P.3d at 120; *Miller*, 113 P.3d at 750. Reversal of Rail's conviction for plain error is therefore unwarranted on this alternative ground.

## III. Conclusion

¶47 We hold that Rail did not waive his claim regarding the jury's inconsistent responses to the unanimity interrogatory. Because nothing in the record indicates that Rail's counsel was aware of any inconsistency, we cannot conclude that counsel intentionally relinquished a known claim by not insisting that the court read the responses to both interrogatories or by declining the court's offer to poll the jury further. We further hold that our decision in *Sanchez* does not compel reversal of Rail's conviction because, unlike in *Sanchez*, entry of a judgment of conviction for SAOC in this case was not structural error. The jury here returned a guilty verdict reflecting its unanimous finding of guilt beyond a reasonable doubt on the elements of SAOC, and any ambiguity in that verdict grounded in

23

the jury's responses on the unanimity interrogatory was resolved through individual polling of the jury. Finally, under the circumstances of this case, we conclude that reversal is not warranted under plain error review. Accordingly, we affirm the judgment of the court of appeals, albeit based on somewhat different reasoning.

**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** joins in the dissent.

JUSTICE GABRIEL, dissenting.

¶48     The majority affirms defendant Paul L. Rail's judgment of conviction and indeterminate life sentence notwithstanding the jury's facially inconsistent special interrogatory answers, one set of which said that the prosecution had proved that Rail had committed the acts at issue and another set of which said that the prosecution had *not* proved those allegations. Because, unlike the majority, I do not believe that the trial court's polling of the jury cured this facial inconsistency, and because I believe that denying Rail a remedy on the unique facts of this case results in a miscarriage of justice, I respectfully dissent.

## I.  Facts and Procedural History

¶49     The People charged Rail with sexual assault on a child and sexual assault on a child by one in a position of trust. At the conclusion of the evidence, the court instructed the jury on and provided separate verdict forms for each of these charges. The court also gave the jury two special interrogatory forms. The first (the "unanimity interrogatories") provided descriptions of four predicate acts and required the jury to mark "Proved" or "Not Proved" for each such act. The second (the "pattern interrogatories") concerned the pattern of abuse sentence enhancer and provided descriptions of the same four predicate acts that were included in the unanimity interrogatories plus one additional predicate act. Again, the jury was asked to mark "Proved" or "Not Proved" for each such act.

1

¶50     When the jury returned its verdicts, the court announced that the jury had found Rail not guilty of sexual assault on a child by one in a position of trust but guilty of sexual assault on a child.  The court then read aloud the jury's responses to the pattern interrogatories, in which the jury had marked "Proved" for each of the listed predicate acts.  The court, however, did *not* read aloud the jury's responses to the unanimity interrogatories, in which the jury had marked "Not Proved" for each of the listed predicate acts.

¶51     The court then polled the jurors as to the two verdict forms and the pattern interrogatories, asking the jurors to confirm that these were their verdicts.  Each juror confirmed that they were.  The court did not raise any issue regarding the jury's inconsistent responses to the unanimity interrogatories, nor did the court inquire of the jurors regarding those inconsistencies, even though it appears that the court (but not the parties) was (or should have been) aware of such inconsistencies.

¶52     Not knowing of these inconsistencies, Rail raised no issue about them and declined further polling.  The court thereafter entered judgment and sentenced Rail to an indeterminate sentence of eight years to life.

¶53     Rail appealed, raising the issue of the jury's inconsistent responses to the special interrogatories, about which he had apparently learned after the fact.  A division of the court of appeals affirmed, however, with the division majority

2

concluding that Rail had waived his inconsistency claim by not requesting that the court read aloud the jury's responses to the unanimity interrogatories and by not otherwise pursuing the issue before the court released the jury. *People v. Rail*, 2016 COA 24, ¶ 42, __ P.3d __. We then granted certiorari.

## II. Analysis

¶54 The majority affirms Rail's judgment of conviction and indeterminate life sentence, concluding that although the division majority below erred in determining that Rail had waived his inconsistency claim, reversal is nonetheless unwarranted because (1) the jury returned a verdict reflecting its unanimous finding of guilt beyond a reasonable doubt on the elements of sexual assault on a child and (2) the trial court's polling of the jury sufficiently cured the facial inconsistency between the jury's responses to the pattern interrogatories and its responses to the unanimity interrogatories. Maj. op. ¶ 47. Although I agree with the majority's conclusion that the division majority erred in determining that Rail had waived his inconsistency claim, for several reasons, I respectfully disagree that the trial court's polling of the jury cured the facially inconsistent special interrogatory answers.

¶55 First, I cannot discern—nor does the majority persuasively explain—how the polling of the jury cured the inconsistent interrogatory responses here. The court read the jury verdicts and only the jury's pattern interrogatory answers and

then asked if those forms correctly represented the jurors' verdicts. Each juror truthfully answered, "Yes." Unlike the majority, I do not believe that these answers cured the facially inconsistent special interrogatory responses because, had the jurors been asked if their unanimity interrogatory responses also correctly reflected their verdicts, I have no doubt that they would have answered, "Yes," to that, too, and the inconsistency would have been public and manifest. Regardless, I perceive nothing in the jury polling that either explained or in any way resolved the jurors' facially inconsistent special interrogatory responses.

¶56 Second, in my view, the trial judge, as the only person in the courtroom other than the jurors who knew of the inconsistency, had an obligation to inquire about that inconsistency. *See Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1423 (10th Cir. 1986) (noting that a trial court is required, *sua sponte*, to grant a new trial if "a verdict reflects inconsistencies on its face indicating either that the jury was in a state of confusion or abused its power"); *United States v. Morris*, 612 F.2d 483, 489 (10th Cir. 1979) ("In any case upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for '[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination.'") (quoting *Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967)); *State v. Zimmerman*, 941 S.W.2d 821, 824–25 (Mo. Ct. App. 1997) (noting that (1) a trial court has a duty to examine

4

verdicts returned by the jury for defects, inconsistencies, and ambiguities; (2) when a jury returns a verdict in an improper form, the trial judge must refuse that verdict and require further deliberations until a verdict in the proper form is returned; and (3) "when confronted with two inconsistent verdicts, the trial court must reject them and send them back for further deliberations to resolve the inconsistency"); Crim. P. 57(b) (noting that if no procedure is specifically prescribed in the Colorado Rules of Criminal Procedure, then a court "shall look to the Rules of Civil Procedure and to the applicable law"); C.R.C.P. 49(b) (providing that when special interrogatory answers are inconsistent with each other or one or more special interrogatory answers are inconsistent with the general verdict, then "judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial").

¶57 Moreover, I perceive no basis for laying the error in this case on Rail's doorstep, particularly when, as here, the trial court's actions left Rail unaware of any inconsistencies in the jurors' special interrogatory responses and the prosecution had, at least, the same incentive as Rail to ensure that the verdicts and special interrogatory responses were in the proper form.

¶58 Third, although the majority offers its view as to how the inconsistent special interrogatory responses might have occurred (recognizing that its view requires an assumption that the jurors misunderstood the trial court's instructions

5

in the unanimity interrogatories), maj. op. ¶ 43, I believe that the majority's proffer is inappropriate for several reasons. To begin with, the People made no such argument in this case, and I do not believe that it is this court's place to craft such an argument for them, particularly when doing so deprives Rail of any fair opportunity to respond to that argument. In addition, the majority's hypothetical scenario is speculative at best, and such speculation is particularly unwarranted here because, as the majority concedes, *see id.*, it requires an assumption that the jury misunderstood the trial court's instructions in the unanimity interrogatories, contrary to our well-settled and oft-cited presumption that jurors follow the court's instructions, *see, e.g.*, *Bondsteel v. People*, 2019 CO 26, ¶ 62, 439 P.3d 847, 856. Lastly, I respectfully do not believe that it is this court's proper role to engage in post hoc speculation as to how inconsistent interrogatory responses might have occurred. The resolution of any such inconsistency is for the trial court, sitting as a finder of fact, not for an appellate court whose role is limited to reviewing for errors of law based on the record and applicable legal authority.

¶59 Finally, I am mindful of our obligation as jurists to apply the law to do justice. Here, based on special interrogatory answers that said both that the prosecution had proved the acts at issue and that it had not proved those acts, the majority affirms a judgment of conviction and an indeterminate life sentence imposed on Rail. Unlike the majority, on the thin record before us, I am not

convinced as to what the jurors intended by their verdicts and special interrogatory answers. Accordingly, I would conclude that entering judgment on the inconsistent special interrogatory answers constituted reversible plain error and that Rail is therefore entitled to a new trial. In my view, denying him such a remedy on the facts of this case—and particularly when he is facing life in prison—results in a miscarriage of justice.

### III. Conclusion

¶60 Because the jurors' special interrogatory answers inconsistently concluded that the prosecution had both proved the acts at issue and had not proved those acts, and because I cannot agree that the trial court's polling of the jury resolved this inconsistency, I would conclude that Rail is entitled to a new trial.

¶61 Accordingly, I would reverse the judgment of the division below, and therefore, I respectfully dissent.

I am authorized to state that JUSTICE HOOD joins in this dissent.