1
 2026 CO 10 The People of the State of Colorado, Petitioner: v. Jacob Alexander Shockey, Respondent: No. 24SC117Supreme Court of Colorado, En BancFebruary 17, 2026
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA311
 
 
          
 Attorneys for Petitioner: Philip J. Weiser, Attorney General
 
 
          
 Jessica E. Ross, Senior Assistant Attorney General
 &Assistant Solicitor General Denver, Colorado
 
 
          
 Attorneys for Respondent: Megan A. Ring, Public Defender
 Casey Mark Klekas, Deputy Public Defender
 
 
 
          
 BOATRIGHT JUSTICE
 
 2
 
          ¶1
 Jacob Alexander Shockey and Parus Mayfield confronted victim
 T.D. outside a liquor store because they believed he owed one
 of them money. A surveillance camera recorded them all
 walking down an alley, reaching another alley out of the
 camera's view. After Shockey reemerged from the alley,
 there was a single flash of light, Mayfield ran, and T.D. was
 later found in the alley with multiple gunshot wounds that
 proved fatal. The People charged Shockey with first degree
 murder and two crime of violence sentence enhancers.
 
 
          ¶2
 At trial and over defense counsel's objection, the court
 allowed the People to discuss the complicity theory of
 criminal liability during voir dire. However, the court later
 refused to instruct the jury on complicity, reasoning that
 the People had not provided sufficient evidence to warrant
 such an instruction. Because the People charged Shockey with
 sentence enhancers, the court gave the jury two
 interrogatories regarding whether the offense constituted a
 crime of violence.
 
 
          ¶3
 Ultimately, the jury found Shockey guilty of the lesser
 included offense of second degree murder. As to the crime of
 violence interrogatories, the first asked whether
 "Shockey use[d], or possess[ed] and threaten[ed] the use
 of, a deadly weapon," and the jury answered
 "[n]o." The second interrogatory asked whether
 "Shockey cause[d] serious bodily injury or death,"
 and the jury answered "[y]es."
 
 3
 
          ¶4
 Shockey appealed, arguing in part that the jury's finding
 that he did not use a deadly weapon was logically and legally
 inconsistent with its guilty verdict for second degree
 murder. A split division of the court of appeals vacated
 Shockey's second degree murder conviction, holding that
 the jury's findings were inconsistent and negated the
 required elements of identity and causation. People v.
 Shockey, 2023 COA 121, ¶ 1, 545 P.3d 984, 986. We
 granted the People's petition for
 certiorari.[1]
 
 
          ¶5
 We now hold that the jury's finding that Shockey did not
 use a deadly weapon does not negate an element of his second
 degree murder conviction, and we can discern the jury's
 unambiguous intent. Hence, no legal or logical inconsistency
 renders the verdict infirm. Accordingly, we reverse the
 judgment
 
 4
 
 of the court of appeals and remand the case back to that
 court for consideration of any unresolved issues remaining.
 
 
          I.
 Facts and Procedural History
 
 
          ¶6
 Shockey and Mayfield went to a liquor store on Colfax Avenue
 in Denver. While there, Shockey recognized T.D. outside, and
 they confronted him regarding an outstanding debt. T.D.
 explained he had just been released from jail and could not
 pay the debt. Surveillance footage then showed the three men
 walking to an alley and continuing further down until they
 turned out of the camera's view. Shockey reappeared less
 than a minute later and was seen walking away from where
 Mayfield and T.D. remained out of view. Approximately one and
 a half minutes after that, there was a single flash of light
 in the trees above the alley and Mayfield was seen running
 away. T.D. was later found in the alley with fatal gunshot
 wounds.[2]
 
 
          ¶7
 The People charged Shockey with first degree murder and two
 crime of violence sentence enhancers.[3] At trial, the People
 asserted that Shockey caused T.D.'s death as the shooter.
 During voir dire, the court allowed the People to
 
 5
 
 discuss the complicity theory of criminal liability over
 Shockey's objection. At the close of the evidence, the
 People submitted a proposed jury instruction on complicity,
 but the trial court denied it, finding that the instruction
 was unsupported by the evidence.
 
 
          ¶8
 The jury found Shockey guilty of the lesser included offense
 of second degree murder. As to the crime of violence
 interrogatories, the first asked whether "Shockey
 use[d], or possess[ed] and threaten[ed] the use of, a deadly
 weapon," and the jury answered "[n]o." The
 second interrogatory asked whether "Shockey cause[d]
 serious bodily injury or death," and the jury answered
 "[y]es." Subsequently, jury polling confirmed its
 verdict.
 
 
          ¶9
 Shockey later filed a motion to vacate the verdict, arguing
 that the jury's answers to the interrogatories were
 logically and legally inconsistent with its guilty verdict.
 He reasoned that because the jury found he was not the
 shooter, it could only have found him guilty of murder based
 on complicity, yet the trial court refused to instruct the
 jury on that theory. The trial court denied the motion,
 finding that jurors "kind of operate with a theory of
 complicity in many situations in any event." The court
 noted that the use of a deadly weapon is not an element of
 second degree murder, meaning the verdict was not
 "logically or legally inconsistent."
 
 6
 
          ¶10
 Shockey appealed, and a split division of the court of
 appeals vacated the guilty verdict. Shockey, ¶
 1, 545 P.3d at 986. The majority held that without a
 complicity instruction, the special interrogatory response
 negated elements of second degree murder-namely, identity and
 causation-and the inconsistency rendered the jury's
 verdict infirm. Id. The majority reasoned that
 because the People's theory of the case was that Shockey
 was the shooter and T.D. died from gunshot wounds, the
 jury's guilty verdict of second degree murder necessarily
 meant it found that Shockey caused T.D.'s death as the
 shooter. Id. at ¶ 49, 545 P.3d at 993. But
 because the jury also found that Shockey did not use a deadly
 weapon, the majority determined that the jury
 "inconsistently concluded that the prosecution had
 not proved that Shockey was the shooter."
 Id.
 
 
          ¶11
 Accordingly, the majority concluded that the inconsistent
 findings on identity and causation could only be reconciled
 by applying complicity, which was not available to the jury.
 Id. Relying on this court's analysis in
 Sanchez v. People, 2014 CO 29, 325 P.3d 553, the
 majority found structural error and the attachment of double
 jeopardy, Shockey, ¶ ¶ 53-55, 545 P.3d at
 994, requiring vacatur and reversal because "the jury
 made a factual determination that the prosecution did not
 prove all of the elements of the offense beyond a reasonable
 doubt," id. at ¶ 51, 545 P.3d at 994.
 
 7
 
          ¶12
 Judge Richman, dissenting in part, argued that the special
 interrogatory did not negate any element of second degree
 murder because the elements, "that the defendant, in the
 State of Colorado, knowingly caused the death of the
 victim," do not include the "use or possession of a
 deadly weapon." Id. at ¶ 60, 545 P.3d at
 995 (Richman, J., concurring in part and dissenting in part).
 Nevertheless, Judge Richman agreed that the conviction could
 not stand because the jury verdict was "logically
 inconsistent and mutually exclusive" absent a complicity
 instruction. Id. at ¶¶ 62-63, 545 P.3d at
 995-96. He concluded that the proper remedy was to order a
 new trial. Id. at ¶ 85, 545 P.3d at 998.
 
 
          II.
 Analysis
 
 
          ¶13
 We begin by establishing our standard of
 review.[4] We then address general requirements for
 jury verdicts. Next, we consider when a jury verdict is
 mutually exclusive and legally inconsistent. After that, we
 review jury verdict issues arising from internal
 inconsistency - namely, between a general verdict and a
 related special interrogatory finding. We also explain how to
 address any remaining
 
 8
 
 logical inconsistency. Finally, we evaluate the law as
 applied to the case presented here.
 
 
          ¶14
 We hold that the jury's finding that Shockey did not use
 a deadly weapon does not negate an element of his second
 degree murder conviction, and we can discern the jury's
 unambiguous intent. Hence, no legal or logical inconsistency
 renders the verdict infirm. Accordingly, we reverse the
 judgment of the court of appeals and remand the case back to
 that court for consideration of any unresolved issues
 remaining.
 
 
          A.
 Standard of Review
 
 
          ¶15
 The question of whether jury verdicts are mutually exclusive
 is a question of law that we review de novo. People v.
 Delgado, 2019 CO 82, ¶ 13, 450 P.3d 703, 705;
 People v. Rigsby, 2020 CO 74, ¶ 11, 471 P.3d
 1068, 1072.
 
 
          B.
 Jury Verdicts and Inconsistency
 
 
          ¶16
 The United States and Colorado constitutions require that the
 state prove every element of a charged offense to the jury to
 sustain a conviction. U.S. Const. art. III, § 2, cl. 3;
 U.S. Const. amend. VI; Colo. Const. art. II, §§ 16,
 25; Griego v. People, 19 P.3d 1, 7 (Colo. 2001).
 Jury verdicts in criminal cases must be "certain and
 devoid of ambiguity." Yeager v. People, 462
 P.2d 487, 489 (Colo. 1969). An unambiguous jury verdict
 demonstrates the jury's "meaning and intention"
 beyond a reasonable doubt. Id.
 
 9
 
          ¶17
 Nonetheless, inconsistency between verdicts is generally
 permissible. People v. Frye, 898 P.2d 559, 570-71
 (Colo. 1995); United States v. Powell, 469 U.S. 57,
 69 (1984). For example, inconsistencies between guilty and
 not guilty verdicts usually fall under the general rule
 permitting inconsistency. Frye, 898 P.2d at 568;
 Rigsby, ¶ 15, 471 P.3d at 1073. However,
 mutually exclusive guilty verdicts are invalid
 because elemental exclusivity-wherein an element of one
 verdict is incompatible with an element of another
 verdict-means each element of the crime was not proven beyond
 a reasonable doubt to support the conviction, and thus, the
 two guilty verdicts cannot be given full legal force
 together. Delgado, ¶ 23, 450 P.3d at 707;
 Rigsby, ¶ 18, 471 P.3d at 1073.
 
 
          ¶18
 To determine if guilty verdicts are mutually exclusive, we
 have applied an elemental approach, finding infirm verdicts
 whose elements of one guilty crime directly negate an element
 of the other guilty crime. Delgado, ¶ 20, 450
 P.3d at 707 (citing Frye, 898 P.2d at 569 n.13). In
 Delgado, we found that two guilty verdicts on both
 robbery and theft based on a single taking were logically and
 legally inconsistent because robbery requires taking with
 force, whereas theft requires taking without force,
 rendering the verdicts mutually exclusive. ¶¶ 3, 5,
 450 P.3d at 704.
 
 10
 
          1.
 Internal Inconsistency Between a General Verdict and a
 Special Interrogatory
 
 
          ¶19
 Apart from inconsistencies between multiple verdicts,
 internal inconsistency may arise in a single verdict.
 Rail v. People, 2019 CO 99, ¶¶ 26-27, 454
 P.3d 1033, 1037-38; People v. Brooks, 2020 COA 25,
 ¶ 1, 471 P.3d 1170, 1172. Where special interrogatory
 responses appear inconsistent with a substantive general
 verdict, the question is whether the jury's interrogatory
 responses "nullify its verdict." Rail,
 ¶27, 454 P.3d at 1038; see also Brooks,
 ¶¶ 1, 16, 471 P.3d at 1172, 1174.
 
 
          ¶20
 When reviewing for internal inconsistency between a verdict
 and special interrogatory responses, we have distinguished
 between guilty and not guilty verdicts on the substantive
 offense. Rail, ¶¶ 39-41, 454 P.3d at
 1039-40. This is because a guilty verdict, unlike a not
 guilty verdict, "reflect[s] [the jury's] finding
 that the People proved all the elements of that
 offense." Id. at ¶ 42, 454 P.3d at 1040.
 In the alternative, where the jury returned a not guilty
 verdict, a special interrogatory response
 "signaling" guilt cannot yield an inferred judgment
 of conviction on the substantive offense. Sanchez,
 ¶ 17, 325 P.3d at 559.
 
 
          2.
 Remaining Logical Inconsistency
 
 
          ¶21
 Since inconsistency in jury verdicts is generally
 permissible, verdicts that appear logically inconsistent may
 still be upheld when there is no legal inconsistency
 rendering them mutually exclusive. Rigsby,
 ¶¶ 23, 26-27, 471 P.3d at 1075-76.
 
 11
 
 "Jury verdicts will not be reversed for inconsistency if
 a reading of the record reveals any basis for the
 verdicts." City of Aurora v. Loveless, 639 P.2d
 1061, 1063 (Colo. 1981); see also Loos v. People,
 268 P. 536, 538 (Colo. 1928) ("If under any view of the
 evidence the verdicts are consistent, the presumption is that
 the jury took that view."). Ultimate resolution thus
 hinges on discernability of the jury's unambiguous
 intent. Yeager, 462 P.2d at 489; Rail,
 ¶ 44, 454 P.3d at 1040-41; Brooks, ¶ 25,
 471 P.3d at 1175.
 
 
          ¶22
 With these principles in mind, we now turn to the facts of
 this case.
 
 
          C.
 Application
 
 
          ¶23
 In determining whether Shockey's jury verdict is infirm,
 we initially focus our analysis on legal inconsistency,
 asking whether the special interrogatory finding negates an
 element of the second degree murder conviction. Essentially,
 we ascertain whether each part of the verdict can be given
 full legal effect together or whether the interrogatory
 establishes that the People did not prove all the required
 elements beyond a reasonable doubt. Because we conclude that
 the verdict and interrogatory response are not mutually
 exclusive, we then evaluate any remaining logical
 inconsistency and determine whether the jury's
 unambiguous intent can be discerned under any view of the
 evidence.
 
 12
 
          1.
 The Special Interrogatory Finding Did Not Negate an Element
 of Second Degree Murder
 
 
          ¶24
 In Colorado, "[a] person commits the crime of murder in
 the second degree if: (a) [t]he person knowingly causes the
 death of a person." § 18-3-103(1)(a), C.R.S.
 (2025). The first crime of violence special interrogatory,
 the one at issue here, asked the jury whether Shockey
 "[u]sed, or possessed and threatened the use of, a
 deadly weapon." § 18-1.3-406(2)(a)(I)(A), C.R.S.
 (2025). The question is whether the jury's finding that
 Shockey did not use a deadly weapon negated its finding that
 he knowingly caused T.D.'s death.
 
 
          ¶25
 Shockey claims that United States v. Randolph, 794
 F.3d 602, 607, 612 (6th Cir. 2015), is instructive as the
 Sixth Circuit held that a guilty verdict on a drug conspiracy
 could not stand when the jury simultaneously responded to an
 interrogatory that no amount of the drugs charged were
 involved. Shockey argues that the jury's interrogatory
 response here reveals that the People did not prove the
 elements of identity and causation beyond a reasonable doubt
 since the only evidence and theory of guilt was that T.D.
 died from gunshot wounds. Shockey asserts that the jury's
 interrogatory response that he did not use a deadly weapon is
 analogous to the interrogatory answer in Randolph.
 
 
          ¶26
 In Randolph, the court concluded that one cannot be
 guilty of a drug conspiracy where no drugs were involved. 794
 F.3d at 612. Hence, the interrogatory specifically negated an
 element of the offense. Id. But here, we note
 
 13
 
 that one can commit second degree murder without using a
 deadly weapon since the crime only requires knowingly causing
 a person's death. Therefore, unlike in Randolph,
 the interrogatory here did not negate an element of the
 offense.[5] Both jury determinations can be given full
 legal effect, and thus, there is no legal inconsistency
 causing elemental exclusivity to render Shockey's verdict
 infirm. Accordingly, Randolph is distinguishable.
 
 
          ¶27
 We also do not see any issue regarding identity or causation
 because the jury's interrogatory response does not speak
 to either element. The interrogatory's only use is for
 sentencing purposes based on whether a jury finds that the
 offense constituted a crime of violence. §
 18-1.3-406(1)(a). By returning a guilty verdict on second
 degree murder, the jury expressly found that Shockey caused
 T.D.'s death. This finding satisfies identity and
 causation requirements. Since the special interrogatory
 finding says nothing regarding identity or causation and is
 only used for sentencing purposes, it does not negate that
 those elements were found proven beyond a reasonable doubt.
 
 
          ¶28
 Next, Shockey relies on Sanchez. In
 Sanchez, the jury found the defendant not guilty of
 the class 4 felony of sexual assault on a child but also made
 two
 
 14
 
 affirmative findings on a pattern of abuse interrogatory,
 which is used to elevate the offense to a class 3 felony.
 ¶¶ 8, 10, 325 P.3d at 556-57. The trial court then
 entered a conviction for the class 3 felony of sexual assault
 on a child-pattern of abuse. Id. We deemed this
 structural error because the verdict "failed to evidence
 a unanimous jury determination that the defendant committed
 all the elements and was guilty of a crime."
 Id. at ¶ 15, 325 P.3d at 558. Sanchez
 thus demonstrates that a court may not disregard the
 jury's acquittal on the substantive offense
 based on special interrogatory findings. Id. at
 ¶¶ 14, 17, 19, 325 P.3d at 558-60. Here, in
 contrast, the jury found Shockey guilty of the
 substantive offense.
 
 
          ¶29
 Shockey's case is more akin to Rail, in which we
 first addressed internal inconsistency arising from a special
 interrogatory arguably nullifying a verdict. There, the jury
 found the defendant guilty of the substantive offense but
 also returned inconsistent interrogatory responses.
 Rail, ¶¶ 11, 41, 454 P.3d at 1035, 1040.
 Specifically, the jury convicted Rail of sexual assault on a
 child and made affirmative findings of incidents on the
 pattern of abuse interrogatory, elevating the offense.
 Id. However, the jury further found that those
 incidents were "[n]ot [p]roved" on the unanimity
 interrogatory attached to a different acquitted charge but
 also applicable to the convicted elevated charge.
 Id. We recognized that "[u]nlike in
 Sanchez, the verdicts [in Rail] reflect a
 unanimous finding of guilt beyond a reasonable doubt,"
 most obviously because the jury "returned a
 guilty
 
 15
 
 verdict on the [substantive] charge." Id. at
 ¶ 42, 454 P.3d at 1040. While we cannot infer a judgment
 of conviction from a verdict subject to other reasonable
 interpretations, Sanchez, ¶ 17, 325 P.3d at
 559, we can uphold a guilty verdict when we are able
 to reconcile the inconsistency and discern the jury's
 unambiguous intent, Rail, ¶ 43, 454 P.3d at
 1040.
 
 
          ¶30
 Accordingly, we conclude that the jury's special
 interrogatory finding does not negate the elements of its
 guilty verdict for second degree murder. We thus turn to the
 question of remaining logical inconsistency and consider
 whether the record provides any basis for understanding the
 jury's unambiguous intent.
 
 
          2.
 We Can Discern the Jury's Intent
 
 
          ¶31
 Shockey argues that his conviction cannot stand because the
 jury found that he was not the shooter and the trial court
 did not instruct the jury on complicity. Shockey relies on
 the proposition that "we cannot affirm a criminal
 conviction on the basis of a theory not presented to the
 jury." Chiarella v. United States, 445 U.S.
 222, 236 (1980).
 
 
          ¶32
 But first, logically inconsistent verdicts are generally
 permissible. Frye, 898 P.2d at 570-71 (following the
 federal rule articulated in Powell). In
 Frye, the jury acquitted the defendant of sexual
 assault in the first degree, which requires applied physical
 force or threatened serious physical violence, but also found
 him guilty of menacing with a deadly weapon. Id. at
 564. We noted that these findings
 
 16
 
 were inconsistent because the evidence showed that the
 defendant used a gun only during the sexual assault.
 Id. at 565-66. However, we concluded that
 consistency between verdicts is unnecessary. Id. at
 571. We opted to follow Powell, which explained that
 "there is no reason to vacate [a defendant's]
 conviction merely because the verdicts cannot rationally be
 reconciled." Powell, 469 U.S. at 69. While
 Frye is factually distinguishable because it
 pertains to verdicts on different offenses, we find its logic
 persuasive based on the facts of this case. We now apply that
 reasoning to internal inconsistency between a substantive
 verdict and a special interrogatory.
 
 
          ¶33
 Next, we find that Chiarella is distinguishable
 because here, Shockey was charged, the jury was instructed,
 and he was convicted of all the elements of the crime. In
 Chiarella, the "jury was not instructed on the
 nature or elements of a duty owed by petitioner," which
 was necessary for his securities fraud conviction. 445 U.S.
 at 236. The Supreme Court reversed his conviction because the
 statute imposed no duty on him to disclose the information
 and no duty was instructed to the jury. Id. at 231.
 The Supreme Court declined to apply the government's
 alternative duty offered on appeal since that was also not
 instructed to the jury. Id. at 235-36. Thus, a
 reviewing court cannot supplement an element after the
 conviction to sustain it. Id. at 236. Because
 complicity is a theory of criminal liability based on a
 certain factual scenario, it is dissimilar to an elemental
 duty
 
 17
 
 based on the legal theory of an offense. Evaluating whether
 we can discern the jury's unambiguous intent here does
 not include impermissibly supplementing an element required
 for the offense. Consequently, the jury's answer to the
 special interrogatory does not conflict with an element of
 second degree murder.
 
 
          ¶34
 Finally, the verdict is "certain and devoid of
 ambiguity" because it "convey[s] beyond a
 reasonable doubt the meaning and intention of the jury."
 Yeager, 462 P.2d at 489. The People charged Shockey,
 and the court instructed the jury on all the elements of
 second degree murder, providing a basis in the record for the
 verdict. City of Aurora, 639 P.2d at 1063. No
 element requires a certain rationale or factual explanation,
 and Shockey is entitled to the benefit of the negative
 finding on the first sentence enhancer interrogatory without
 it affecting his conviction. See Frye, 898 P.2d at
 566-67. Because the jury found Shockey guilty of second
 degree murder, it unambiguously established that the People
 proved each element beyond a reasonable doubt. The jury's
 finding on the second interrogatory that Shockey caused the
 death of T.D. supports this conclusion because that finding
 expressly speaks to identity and causation. The only impact
 of the jury's first interrogatory response was that the
 People did not prove beyond a reasonable doubt that Shockey
 used a gun as a crime of violence for sentencing purposes,
 and that is independent of the jury's elemental
 determinations for the offense. Further, jury polling
 subsequently confirmed the jury's unanimous
 
 18
 
 verdict of second degree murder. Thus, despite the jury's
 interrogatory response, the verdict can be viewed in a way to
 eliminate any ambiguity concerning the jury's intent, and
 any remaining inconsistency is not grounds to vacate the
 conviction.
 
 
          III.
 Conclusion
 
 
          ¶35
 We hold that the jury's finding that Shockey did not use
 a deadly weapon does not negate an element of his second
 degree murder conviction, and we can discern the jury's
 unambiguous intent. Hence, no legal or logical inconsistency
 renders the verdict infirm. Accordingly, we reverse the
 judgment of the court of appeals and remand the case back to
 that court for consideration of any unresolved issues
 remaining.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following three issues:
 
 
 1. Whether any claim that the jury's findings are
 inconsistent was waived where the findings were read aloud by
 the district court and the defendant did not object until
 after the jury was discharged.
 
 
 2. Whether a finding on a special interrogatory that
 the prosecution had not proven beyond a reasonable doubt the
 defendant used, or possessed and threatened the use of, a
 deadly weapon is logically and legally inconsistent with a
 conviction for second degree murder or negates an element of
 that offense.
 
 
 3. Whether the appropriate remedy for an inconsistent
 verdict and special interrogatory finding is vacation of the
 conviction and entry of a judgment of acquittal or reversal
 of the conviction and remand for a new trial.
 
 
 [2] The forensic pathologist who conducted
 T.D.'s autopsy testified that T.D. had five entrance
 gunshot wounds caused by three identified bullets. The
 gunshot wound to T.D.'s right chest ultimately caused his
 death.
 
 
 [3] Mayfield was also charged, but he
 accepted a plea agreement in exchange for testifying against
 Shockey.
 
 
 [4] In light of our holding, we decline to
 address whether Shockey waived his claims and whether the
 proper remedy for when an interrogatory finding negates an
 element of the offense is vacatur of the conviction and entry
 of a judgment of acquittal due to the attachment of double
 jeopardy or reversal of the conviction and remand for a new
 trial.
 
 
 [5] We also distinguish the present case
 from Brooks, in which a jury convicted the defendant
 of first degree burglary but also found that he did not use a
 deadly weapon, because the use of a deadly weapon itself was
 an element of first degree burglary as charged in that case.
 ¶¶ 8, 23, 471 P.3d at 1173, 1175.
 
 
 ---------